OPINION OF THE COURT
 

 Wesley, J.
 

 This troubling case involves an egregious abuse of the physician-patient relationship — the conscious use of a doctor’s professional position to exploit a patient’s vulnerabilities for self-gratification through sexual contact. Plaintiff N. X., a young woman recovering from vaginal surgery at Cabrini Medical Center, was sexually assaulted by a surgical resident employed by the hospital. There is no dispute about the assault or the resident’s liability. However, we are called upon to determine whether Cabrini may be liable here under a theory
 
 *250
 
 of vicarious liability or for any negligence in its duty to protect plaintiff.
 

 After undergoing a laser ablation of genital warts, plaintiff— still under the effects of anesthesia — was placed in the Phase I recovery room, a small, four-bed ambulatory surgical unit. Nurse Imelda Reyes, accompanied by another nurse, admitted plaintiff to the unit and monitored her vital signs. Minutes later, the nurses turned their attention to a second patient who had been placed on an adjacent bed just two feet away. They were soon joined by Nurse Gamboa, their supervisor. Although curtains existed between each patient area, the curtain between plaintiff and the second patient was not drawn. The remaining two beds in the unit were unoccupied.
 

 Shortly thereafter, Dr. Andrea Favara, a surgical resident wearing Cabrini scrubs and identification, entered the recovery room and headed for plaintiff’s bed. Favara was not one of the physicians listed on plaintiff’s chart; none of the nurses knew him. According to plaintiff, she awoke to find Favara pulling up her hospital gown, pushing her thighs apart, and ordering her to open her legs. He then placed his fingers inside her vagina and anus. Plaintiff tried to sit up and cover herself with the gown, and repeatedly asked him to stop. Upon her third plea, he removed his fingers, causing her great pain. As the doctor was hastily leaving the recovery room, the nurses intercepted him and introduced themselves. Although all of the nurses were in close proximity to plaintiff’s bed and appear to have been generally aware of Favara’s presence, they denied seeing his interaction with plaintiff or hearing anything. After plaintiff complained to the nurses about what had taken place, the supervising nurse confronted Favara, who admitted he had “examined” plaintiff without the presence of a female witness as required by hospital rules. Following an investigation, Cabrini terminated Favara.
 

 Plaintiff commenced this action asserting several causes of action against Cabrini, including negligent hiring, negligence in failing to safeguard her adequately and medical malpractice. She also claimed that Cabrini was vicariously liable for Favara’s conduct, alleging that he was acting within the scope of his employment or under the cloak of apparent authority. Insofar as relevant here, Supreme Court concluded that questions of fact precluded defendant’s motion for summary judg
 
 *251
 
 ment with respect to the failure to safeguard claim and whether the assault was within Favara’s scope of employment.
 
 [1]
 

 A divided Appellate Division modified by granting Cabrini’s motion in its entirety (280 AD2d 34). The majority began its analysis with the assertion that "it is uncontroverted that the nurses were unaware of the assault until after it occurred”
 
 (id.
 
 at 40). It then reasoned that the direct negligence claim must fail because Favara’s misconduct was not foreseeable as a matter of law and liability was further precluded by practical and policy considerations underlying the physician-nurse relationship. The Court also dismissed the vicarious liability claims because the doctor was unquestionably acting outside the scope of his authority. Two dissenters disagreed with the majority on both matters. They noted that the majority’s holding on the direct negligence cause of action failed to consider the actual foreseeability of harm indicated by “observations the hospital staff could or
 
 should have
 
 made at the time immediately preceding the actual wrongdoing, of things sufficiently unusual or out of the ordinary as to strengthen the possibility of misconduct, in order to warrant some curative action or follow-up” (280 AD2d, at 50). We agree, in part, with the dissent and reinstate plaintiffs direct negligence cause of action only.
 

 We reject plaintiffs assertion that Cabrini is vicariously liable for Favara’s misconduct. Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer’s business and within the scope of employment
 
 (see, Riviello v Waldron,
 
 47 NY2d 297, 302). A sexual assault perpetrated by a hospital employee is not in furtherance of hospital business and is a clear departure from the scope of employment, having been committed for wholly personal motives
 
 (see, Judith M. v Sisters of Charity Hosp.,
 
 93 NY2d 932, 933).
 
 [2]
 
 In
 
 Judith M.,
 
 this Court rejected a claim of vicarious liability on similar facts. There, an orderly assigned
 
 *252
 
 to bathe a patient sexually abused her while doing so. We held that the employee “departed from his duties for solely personal motives unrelated to the furtherance of the Hospital’s business”
 
 (id.
 
 at 933;
 
 see also, Cornell v State of New York,
 
 46 NY2d 1032,
 
 affg
 
 60 AD2d 714;
 
 Mataxas v North Shore Univ. Hosp.,
 
 211 AD2d 762).
 

 As the Appellate Division majority opinion aptly recognized, this case presents an even more compelling basis for dismissal of the vicarious liability claim than
 
 Judith M.
 
 Unlike the employee in
 
 Judith M.,
 
 who committed a sexual assault while engaged in his assigned duties, Favara was not charged with plaintiffs care. Furthermore, it is conceded that an internal pelvic exam was contraindicated in light of the nature of plaintiffs surgery. Thus, plaintiffs disingenuous attempt to characterize the misconduct as a purported “examination” that was within Favara’s hospital duties is of no avail. We refuse to transmogrify Favara’s egregious conduct into a medical procedure within the physician’s scope of employment. This was a sexual assault that in no way advanced the business of the hospital.
 
 [3]
 

 However, we disagree with the Appellate Division’s determination that the hospital was entitled to summary judgment on plaintiffs claim that Cabrini’s nurses failed to protect plaintiff adequately as she recovered from surgery. To reach this result we need not — and do not — accept plaintiffs invitation to adopt a rule of “heightened” duty premised on plaintiffs sedated condition that would require nurses in such instances to stop doctors and other health care professionals to ascertain their purpose before allowing them to approach a patient. We conclude, however, that under the settled hospital-patient duty equation there are issues of fact as to whether the nurses actually observed or unreasonably ignored events immediately preceding the misconduct which indicated a risk of imminent harm to plaintiff, triggering the need for protective action.
 

 A hospital has a duty to safeguard the welfare of its patients, even from harm inflicted by third persons, measured by the capacity of the patient to provide for his or her own safety
 
 (see,
 
 
 *253
 

 Morris v Lenox Hill Hosp.,
 
 232 AD2d 184, 185,
 
 affd for reasons stated
 
 90 NY2d 953). This sliding scale of duty is limited, however; it does not render a hospital an insurer of patient safety or require it to keep each patient under constant surveillance
 
 (see, Killeen v State of New York,
 
 66 NY2d 850, 851). As with any liability in tort, the scope of a hospital’s duty is circumscribed by those risks which are reasonably foreseeable
 
 (see, Hamilton v Beretta U.S.A. Corp.,
 
 96 NY2d 222, 232;
 
 see also, Di Ponzio v Riordan,
 
 89 NY2d 578, 583).
 

 Cabrini regards the sexual assault of a patient by a physician having no known history of sexual misconduct as a risk so remote that, as a matter of law, it can never be reasonably foreseeable. We do not disagree with that general conclusion insofar as it relates to the theoretical and unknown possibility of an attack taking place in the absence of a defendant’s prior knowledge of an employee’s dangerous propensities
 
 (see, e.g., Cornell v State of New York, supra
 
 [no hospital liability because risk of sexual assault by attendant with clean record not foreseeable];
 
 see generally, Nallan v Helmsley-Spear, Inc.,
 
 50 NY2d 507, 519-520). However, this reasoning should not be used in this case to preclude a hospital’s liability for actually observed or readily observable misconduct committed in the very presence of hospital employees. Thus, the question presented here is whether the hospital’s nurses had a duty to protect plaintiff once there were acts or events suggesting that an assault or unauthorized “examination” was about to take place — and did take place — in their presence.
 

 In our view, plaintiff has identified several unusual circumstances surrounding Favara’s appearance in the recovery room that should have alerted the nurses that plaintiff was in obvious jeopardy of imminent harm. Plaintiffs family physician affirmed that he was familiar with Cabrini’s practices and that residents, such as Favara, are seldom called to the recovery room. Nurse Reyes acknowledged that residents were not directly assigned to the recovery room. Her deposition testimony further indicated that she was aware of the identity of all of plaintiffs physicians, and that Favara was not one of those assigned to plaintiffs care. In fact, all of the nurses in the recovery room were unacquainted with Favara. Reyes also admitted that she saw Favara enter the recovery room and proceed directly to plaintiff’s bedside. Moreover, although the nurses maintained that they never saw Favara wear, remove or dispose of any gloves in the recovery room, gloves were available near plaintiff’s bed and plaintiff in her affidavit asserted that after the assault, she observed blood on the doctor’s gloves.
 

 
 *254
 
 All of the nurses knew of the hospital’s policy requiring the presence of a female staff member during a male physician’s pelvic examination of a female patient. Indeed, Cabrini concedes that the result below “might be different if a nurse had observed a violation of [its] policy and failed to intervene” (defendant’s brief, at 27). Thus, a factfinder could reasonably conclude that the nurses, who concededly knew that an internal examination was contraindicated for plaintiff, were on notice that an unknown doctor wearing surgical gloves — usually worn for internal examinations — approached plaintiff’s bedside ostensibly intent on examining her.
 

 According to plaintiff’s testimony, Favara pulled up her gown, ordered her to open her legs and then instructed her to open them wider. She repeatedly asked him to stop as he began the examination. Despite the nurses’ assertions that they saw or heard nothing, an additional key question of credibility arises from the inference created by the undisputed close proximity of all of the nurses to plaintiff’s bed. The entire recovery room was approximately 18 by 14 feet, and contained four beds, each of which was only about two feet from the adjacent bed; only two of the beds were occupied. The curtain between plaintiff’s bed, which was nearest the wall, and that of the second patient was not drawn.
 

 Although her back was turned to plaintiff, Nurse Reyes was only three to four feet from the foot of plaintiff’s bed — easily within earshot — as Reyes filled in the second patient’s chart. She observed Favara pass her and go to plaintiff’s bed. Nurse Gamboa was situated between the second and third beds in the room, facing the patient in the second bed. Given the arrangement of the room, she would also have been facing the first, uncurtained bed, where plaintiff was located. Indeed, Nurse Gamboa admitted that nothing obstructed her view of plaintiff’s bed. Notably, at her deposition, Nurse Gamboa initially testified that she had overheard conversation between plaintiff and Favara while she was at the bedside of the second patient. Finally, there is some disagreement as to the length of time Favara was in the room. Nurse Reyes testified it was less than a minute, although she also claimed she had time to fill in a multiple-entry, seven page chart for the other patient.
 

 In our view, contrary to the Appellate Division majority, this confluence of factors provides a sufficient basis from which a jury could determine that the nurses unreasonably disregarded that which was readily there to be seen and heard, alerting them to the risk of misconduct against plaintiff by Favara, which could have been prevented.
 

 
 *255
 
 We emphasize that our holding today does not establish a broader duty than that historically placed upon hospitals to their patients. Our holding does not impose a “gatekeeping” function upon nurses to stop and question physicians, ascertain reasons for their presence, or to stand guard and monitor their interactions with patients. We simply hold that observations and information known to or readily perceivable by hospital staff that there is a risk of harm to a patient under the circumstances can be sufficient to trigger the duty to protect. This commonsense approach safeguards patients when there is reason to take action for their protection and does not burden the practice of medicine or intrude upon the traditional relationship between doctors and nurses
 
 (see, Toth v Community Hosp. at Glen Cove,
 
 22 NY2d 255, 265,
 
 rearg denied
 
 22 NY2d 973).
 

 Accordingly, the Appellate Division order should be modified, with costs to plaintiff, by remitting to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Rosenblatt and Graffeo concur.
 

 Order modified, etc.
 

 [1]
 

 . The negligent hiring claim was withdrawn and plaintiff’s attorney informed the court that the only remaining claims to be considered were those for direct negligence and vicarious liability. A default judgment was entered against Favara.
 

 [2]
 

 . The medical profession itself recognizes the entirely personal motivation for such conduct (see, AMA Council on Ethical & Judicial Affairs,
 
 Sexual Misconduct in the Practice of Medicine,
 
 266 JAMA 2741, 2742 [1991] [“self-gratification is the only basis for the behavior of physicians who engage in sexual contact with incompetent or unconscious patients”]).
 

 [3]
 

 . [1] Plaintiffs reliance on the doctrine of apparent authority is also unavailing. Liability premised on apparent authority, usually raised in a business or contractual dispute context, arises where a third party reasonably relies upon the misrepresentation of an agent’s authority through conduct of the principal (see,
 
 Hallock v State of New York,
 
 64 NY2d 224, 231). Plaintiff has made no showing that she relied on any representation by Cabrini with respect to Favara.