[990 NYS2d 770]

RAY TROUP, Plaintiff, v BOVIS LEND LEASE LMB, INC., et al., Defendants.

Supreme Court, Kings County, April 24, 2014

**APPEARANCES OF COUNSEL**

*Newman, Myers, Kreines, Gross & Harris*, New York City, for Bovis Lend Lease LMB, Inc., and others, defendants.

*Philip J. Rizzuto, P.C.*, Carle Place, for plaintiff.

**OPINION OF THE COURT**

MARK I. PARTNOW, J.

Defendants move, pursuant to CPLR 3212, for an order granting summary judgment dismissing plaintiff's complaint.

## Background

On November 14, 2007, plaintiff Ray Troup was employed as a security guard by nonparty Eddington Security at a certain ongoing construction project at 255 E 74th Street in New York, New York. The project was known as "La Casa 74." Before becoming licensed, Troup's training included an eight-hour course and a 16-hour course.

At the time of his employment and the subject incident, the two entities which dominated the project were defendants Pin-

nacle Industries II, LLC (Pinnacle), and Bovis Lend Lease LMB, Inc. (Bovis), which was the general contractor and, according to the deposition testimony of Neal Cohen, who testified on behalf of defendant-owner Casa 74th Development LLC (Casa), was the designated construction manager. All of the subcontractors were engaged by and reported to Bovis. Cohen testified that Bovis was in charge of safety-related matters at the site, and identified Al Juneau, a Bovis employee, as the superintendent managing the project on behalf of Bovis.

Michael Mariscano, the safety manager for Pinnacle, testified that there were no guidelines or requirements for any of the employees hired to perform work at the job site other than they be union members. Thus, no background checks or investigations as to whether any newly-hired employees had a violent criminal record were conducted.

As set forth in the record, Troup took his assignments from Eddington. He never had any discussions with Casa's employees or principals, never attended meetings about the project or project security, and never discussed security with Pinnacle before the subject incident. After working with Eddington for about one month, Troup was assigned the task of creating identification badges for the workers at the site, all of whom were required to wear them.[1] He was not provided with or authorized to employ any sort of weapon. He was provided with a walkie-talkie radio, which was owned by Casa and provided by Bovis. The procedure he followed involved going into a designated shanty, having the worker complete a form, and using a camera with which he was provided, taking the worker's photograph. This assignment, together with preventing the entry of unauthorized persons onto the work site, was plaintiff's primary responsibility.

Bovis had instructed plaintiff that every worker needed to have an identification card. Juneau advised plaintiff that plaintiff's responsibility was to process the cards, and that Troup was to contact Juneau, or a Bovis or Pinnacle foreman, via the walkie-talkie radio if anyone resisted, as the radios were expressly provided for the purpose of conflict resolution. According to the testimony of Stephen Nash-Webber, Bovis's project manager, verbal conflicts occurred approximately 10 times per month.

---

1. During the course of his employment, plaintiff wore a uniform and an identification tag from his employer, Eddington.

According to plaintiff's deposition testimony, on November 14, 2007, he arrived at work and was advised that no radios were available either in his office or in Bovis's office. At some later point in time, three Pinnacle employees arrived at the job site without identification, and plaintiff and these three workers went into the shanty to undertake the identification card process. At some point, one of the individuals, identified as Michael Zerbo, became verbally abusive toward plaintiff, stating, "F—Bovis. They can't stop me from making my money. There's nobody that's going to kick me off this site. I don't even need to take this ID. I don't want to take this ID."

Plaintiff asked Zerbo to leave, but Zerbo refused. He then closed in on plaintiff and shoved him. Plaintiff testified that at this point, he reached, in vain, for his radio. A physical altercation ensued, resulting in plaintiff's falling to the ground, where plaintiff sustained a fracture of the leg which required surgery. Within two minutes, Juneau came into plaintiff's shanty, arranged for plaintiff's medical treatment and completed an incident report.

Plaintiff commenced the instant lawsuit alleging violation of Labor Law § 200 and common-law negligence. Plaintiff contends that the fact that he lacked a radio on that day was a contributing factor to his injuries.

Defendants' Motion

In first seeking dismissal of plaintiff's Labor Law causes of action, defendants contend that as a security guard, he is not entitled to the protections of the Labor Law. They further assert that because an employer is not responsible under the doctrine of respondeat superior for torts that arise out of the personal motives of the employee, Pinnacle cannot be held liable, and, since neither Casa nor Bovis employed Zerbo, the doctrine is not applicable to them.

Defendants further maintain that as there is no evidence that Zerbo had a known propensity for violent or tortious conduct, there can be no liability for negligent hiring or supervision.

Finally, project owner Casa and construction manager Bovis deny supervising the manner or means by which plaintiff or his assailant performed their work and did not direct how such work should be performed, and, contending that they lacked any authority to do so, seek summary judgment dismissing the common-law negligence cause of action.

Plaintiff's Opposition

Initially, plaintiff seeks denial of defendants' motion based upon the fact that it is supported solely by an attorney's affirmation and unsigned deposition transcripts. Further, he contends that defendants have failed to address all of the allegations contained in his verified bill of particulars, including that he was affirmatively placed in a hostile work environment due to the widespread resistance, on the part of the work force, to the ID badge process to which plaintiff was assigned, that surveillance monitors should have been placed in the shanty, and that he was deprived of the use of a radio, the only means by which he could communicate and seek assistance.

Further, plaintiff contends that Pinnacle is liable for the tortious conduct of Zerbo, whom it employed, arguing that (1) because the subject matter of the dispute was Zerbo's unhappiness with the ID badge process, it was work-related, and not personally motivated; and (2) based upon Nash-Webber's testimony that similar disputes had occurred in the past, the event was not unforeseeable. He goes on to contend that because the hiring process did not include a screening process, defendants are responsible under a theory of negligent hiring of Zerbo, and, noting that Bovis owned the radios with which plaintiff was not provided that day, contends that defendants breached their common-law duty of providing plaintiff with a safe place to work. With regard to the latter contention, plaintiff rejects Bovis's claim of noninvolvement in the ID badge process, citing his own testimony that the assignment to create the identification badges came from Bovis; asserting that Bovis, the general contractor, issued plaintiff his instructions through Juneau, its employee; and, referring to Cohen's testimony, maintaining that Bovis had jurisdiction over any resistance by employees stemming from the ID badge process.

As to the challenged applicability of Labor Law § 200, plaintiff argues that irrespective of whether plaintiff was directly involved in construction, his cause of action thereunder is premised on the statutory language imposing liability where there is a dangerous condition and the defendant has control over the work site and notice of the condition.

Finally, asserting that defendants fail to provide an affidavit from any Pinnacle employee and omitted the accident report prepared by Juneau following the incident, plaintiff contends that none of his allegations are disputed, and invites the court to search the record and grant summary judgment in his favor on the issue of liability.

In addition to providing his own affidavit, where he alleges that he "instinctively" reached for his radio after Zerbo became verbally abusive and began shoving him before grabbing plaintiff and pushing him hard, whereupon he fell to the ground, plaintiff provides an affidavit of Henry Murphy, C.P.P., who states therein that he is a qualified safety expert in this jurisdiction.

Affidavit of Henry Murphy

Murphy states that in order to perform his investigation, he reviewed the deposition transcripts of the parties and nonparties to this litigation, as well as photographs and other investigation materials forwarded to him by plaintiff's counsel. He alleges that prior to November 14, 2007, plaintiff complained to his supervisor that the ID requirement was creating a hostile environment at the workplace and that on the date of the incident, the radio which he used for communication had been removed. He indicates that at the time Zerbo began the confrontation, no other security guards were present, nor was plaintiff able to radio for help. He opines, based upon a reasonable degree of safety standards, that this incident occurred due to multiple departures therefrom. Specifically, he opines that Bovis, as Juneau's employer, knew about the specific danger plaintiff was in, having assigned him to the task of having agitated workers issued identification cards against the wishes of the employees. He further asserts that a greater security presence should have been instituted during this time to protect the security guards (sic) involved in this task, and that Troup had complained several times about the agitation displayed by the workers. In addition, he opines that the failure to provide any type of radio communication is a clear violation of basic security standards, since it is the only defense against personal injury which is available to the unarmed security personnel.

Defendants' Reply

In their reply, defendants assert that plaintiff has failed to make a showing that raises an issue of fact in opposition to their motion. Citing what is contended to be controlling authority, defendants claim that they have provided adequate evidentiary support for their motion. In addition, they assert that based upon plaintiff's own testimony, the missing radio was not a substantial factor in causing or contributing to plaintiff's injuries, and that plaintiff is creating a feigned issue of fact in an effort to defeat the motion.

## Discussion

The burden on a motion for summary judgment rests initially upon the moving party to come forward with sufficient proof in admissible form to enable a court to determine that it is entitled to judgment as a matter of law. If this burden cannot be met, the court must deny the relief sought (CPLR 3212; *Zuckerman v City of New York*, 49 NY2d 557 [1980]). However, once a moving party has made a prima facie showing of its entitlement to summary judgment, "the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*Garnham & Han Real Estate Brokers v Oppenheimer*, 148 AD2d 493, 494 [1989]; *see also Zuckerman*, 49 NY2d at 562). Mere conclusory statements, expressions of hope, or unsubstantiated allegations are insufficient to defeat the motion (*Gilbert Frank Corp. v Federal Ins. Co.*, 70 NY2d 966 [1988]).

As a threshold matter, the court finds no merit to plaintiff's contention that defendants have failed to support their motion with adequate evidentiary submissions. It is amply well settled that the failure to submit an affidavit by a person with knowledge of the facts is not necessarily fatal to a motion where, as here, the moving party submits other proof, such as deposition testimony with an attorney's affirmation (*see Notskas v Longwood Assoc., LLC*, 112 AD3d 599 [2013]), and a certified but unsigned deposition transcript whose accuracy is not challenged in opposition papers is likewise admissible (*see Pavane v Marte*, 109 AD3d 970, 971 [2013] ["(f)urthermore, although unsigned, as noted above, the transcripts of McKay's and Carrion's depositions were certified, and the plaintiffs did not raise any challenges to their accuracy. Thus, the transcripts qualified as admissible evidence for purposes of the defendants' motion for summary judgment"]). Here, all of the relevant transcripts are duly and properly certified, and plaintiff does not challenge their accuracy. Accordingly, plaintiff's contention in this regard, which borders on the frivolous, is rejected.

In addition, there is no merit to plaintiff's claim that defendants have failed to address all allegations and theories raised in his verified bill of particulars and supplemental bill. Plaintiff's unsupported claim that defendants, by implementing an identification card process in which plaintiff became involved with construction workers, created a "hostile work environment," is speculative and conclusory. At best, the term "hostile work environment" describes a workplace which exists "[w]hen

. . . permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 310 [2004], citing *Harris v Forklift Systems, Inc.*, 510 US 17, 21 [1993] [citations and internal quotation marks omitted]). The term, also employed by plaintiff's expert in his affidavit in describing plaintiff's complaints allegedly directed to his supervisor at Eddington prior to the incident, has not been shown by citation to any controlling authority to have any meaning in the instant context, and the expert, while bootstrapping plaintiff's use of the terminology, describes no actionable conduct upon which an opinion can be based. Consequently, defendants have adequately addressed plaintiff's allegation that he was not provided with a safe place to work.

Labor Law § 200 is merely a codification of the common-law duty placed upon owners and contractors to provide employees with a safe place to work (*Yong Ju Kim v Herbert Constr. Co.*, 275 AD2d 709, 712 [2000]). In order for an owner or contractor to be held liable under a Labor Law § 200 cause of action, there must be evidence that the owner or contractor controlled and supervised the manner in which the underlying work was performed, or that it created or had notice of the alleged dangerous condition which caused the accident (*see Yong Ju Kim* at 712; *Kanarvogel v Tops Appliance City*, 271 AD2d 409, 411 [2000]; *see also Perri v Gilbert Johnson Enters., Ltd.*, 14 AD3d 681, 683 [2005], quoting *Dos Santos v STV Engrs., Inc.*, 8 AD3d 223, 224 [2004] ["(g)eneral supervisory authority at a work site for the purpose of overseeing the progress of the work and inspecting the work product is insufficient to impose liability for common-law negligence and under Labor Law § 200"]; *Singleton v Citnalta Constr. Corp.*, 291 AD2d 393, 394 [2002]). Where the defect or dangerous condition arises from the worker's own methods, and the owner or contractor exerted no supervisory control over the work, no liability attaches to these parties (*see Ruccolo v City of New York*, 278 AD2d 472, 474 [2000]). Here, the theory of liability is not based upon the methods of plaintiff's work, but rather on the "defective condition" language of the statute (*see Bayo v 626 Sutter Ave. Assoc., LLC*, 106 AD3d 648 [2013]).

■ Defendants have met their initial burden of demonstrating prima facie that the protections afforded by the Labor Law do not apply to plaintiff. As stated in *Spaulding v S.H.S. Bay*

*Ridge* (305 AD2d 400 [2003]), where the plaintiff, a security guard at a construction project owned by the defendant, was injured when descending an extension ladder which allegedly skidded out from under him,

> "[w]e agree with the defendant's contention that the plaintiff is not a person entitled to the protection of the Labor Law. He was neither 'permitted or suffered to work on a building or structure' (*Mordkofsky v V.C.V. Dev. Corp.*, 76 NY2d 573, 576 [1990]), nor was he performing work necessary and incidental to the erection or repair of a building or structure (*see Lombardi v Stout*, 80 NY2d 290 [1992]). Accordingly, under the circumstances of this case, the causes of action alleging violations of Labor Law . . . § 200 . . . should have been dismissed. Additionally, no recovery is available pursuant to Labor Law § 200 or under a theory of common-law negligence because the defendant exercised no supervision or control over the plaintiff's work" (*id.* at 400-401 [citations omitted]; *Kuffour v Whitestone Constr. Corp.*, 94 AD3d 706 [2012]).

Moreover, under the facts presented, there can be no finding that either the defendant owner or defendant general contractor/ construction manager, both of whom have shown that any supervisory authority exercised was only of a general nature, and who did not employ plaintiff's assailant or have any actual or constructive notice of his act of violence, can be liable under such theory (*see Bayo v 626 Sutter Ave. Assoc., LLC*, 106 AD3d 648 [2013]; *see also Loucks v Community Home Care Servs.*, 209 AD2d 484 [1994] [as a matter of law, respondeat superior liability cannot exist without an employer-employee relationship]).

In addition, both with respect to Labor Law § 200 and on the question of common-law liability, Casa and Bovis have demonstrated, prima facie, that they did not supervise the manner or means by which plaintiff or Zerbo performed their work. Plaintiff testified that he received instructions from his own employer, Eddington, as to how to perform his tasks using the equipment provided by Eddington. While he further testified that, according to "general knowledge," Bovis was in charge of all of the subcontractors and the work site, nothing in his testimony leads to a conclusion that he was supervised by Bovis or Casa.

Similarly, Pinnacle, the entity which employed Zerbo and which is therefore in a position to be subject to the application

of the principle of respondeat superior, has met its initial burden. The doctrine of respondeat superior renders an employer "vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment" (*N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 251 [2002]; *accord Kunz v New Netherlands Routes, Inc.*, 64 AD3d 956, 958 [2009]). Factors relevant to a determination of whether an employee's acts fall within the scope of employment include

> "the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated" (*Riviello v Waldron*, 47 NY2d 297, 303 [1979]; *see McKay v Healthcare Underwriters Mut. Ins. Co.*, 295 AD2d 686, 687-688 [2002], *lv denied* 99 NY2d 503 [2002]; *Dykes v McRoberts Protective Agency*, 256 AD2d 2, 2-3 [1998]).

While this inquiry generally presents questions of fact, summary judgment is appropriate if the undisputed facts demonstrate that the doctrine is inapplicable (*see Carlson v Porter*, 53 AD3d 1129, 1131-1132 [2008], *lv denied* 11 NY3d 708 [2008]; *Crawford v Westcott Steel Co.*, 188 AD2d 731, 732 [1992]).

Here, the record is devoid of any showing that plaintiff had any dealings with Pinnacle, and Pinnacle has demonstrated, based upon the record, that (1) Zerbo's conduct arose out his own personal motives relating to his aversion to the identification procedures employed at the work site, and did not further its interest (*see Vega v Northland Mktg. Corp.*, 289 AD2d 565, 566 [2001] ["(t)he actions of the defendant Milkid Singh, a gasoline attendant at Citgo, in striking and pushing the plaintiff when she inquired about the gasoline pump's meter while purchasing gasoline from Citgo were not incidental to the furtherance of Citgo's business and fell outside the scope of Singh's employment"]), and (2) his sudden violent act was not one which could reasonably have been anticipated.

■ Finally, Pinnacle has demonstrated, prima facie, that it cannot be held liable under a theory of negligent hiring, retention, or supervision, which requires a showing that it knew or should have known of the employee's propensity for the conduct

which caused the injury (*see Vasquez v Sirkin Realty Corp.*, 107 AD3d 410, 411 [2013]; *Kenneth R. v Roman Catholic Diocese of Brooklyn*, 229 AD2d 159 [1997]).

As defendants have met their burden on their motion, the burden shifts to plaintiff to raise an issue of fact. Plaintiff has failed to do so.

Plaintiff has failed to raise an issue of fact as to the applicability of Labor Law § 200 to his claims, and the authority upon which he relies fails to overcome, or even pertain to, the holding in *Spaulding*. For example, in *Jock v Fien* (80 NY2d 965 [1992]), the plaintiff was employed in a factory which manufactured septic tanks, and suffered injuries when he fell from an upright steel mold. In ordering the plaintiff's claims under Labor Law § 200 reinstated upon a finding that "section 200 is not limited to construction work and does not exclude employees engaged in normal manufacturing processes," the Court of Appeals held that the "safe place to work" language of section 200 applied to factories and is not limited to construction work (*id.* at 967). The Court did not expand the application of the statute beyond persons "permitted or suffered to work on a building or structure" (*Mordkofsky v V.C.V. Dev. Corp.*, 76 NY2d 573, 576 [1990]).[2] Similarly, in *Lane v Fratello Constr. Co.* (52 AD3d 575 [2008]), where the plaintiff, a glazier, was injured in the workplace when he fell on a pile of debris created by other subcontractors, the Appellate Division reinstated the plaintiff's Labor Law § 200 claim as asserted against the general contractor based upon the finding that a defective condition existed, and the general contractor failed to establish, prima facie, that it lacked control over the premises or that it lacked actual or constructive notice of the defective condition. Finally, and equally unavailing, is the holding in *Comes v New York State Elec. & Gas Corp.* (82 NY2d 876 [1993]). In that case, the plaintiff, an employee of the general contractor hired to construct a building by the defendant landowner, was injured when ordered by his employer to carry a 14-foot-long steel beam unassisted. The Court of Appeals affirmed the Appellate Division's dismissal of plaintiff's Labor Law § 200 causes of action as against the landowner under any theory of liability.

As to the common-law duty to provide a safe place to work, plaintiff has failed to make any showing, as to Bovis or Casa,

---

**2.** In addition, the Court noted that "as all counsel appeared to acknowledge at oral argument, plaintiffs' cause of action in that regard should not have been dismissed" (*Jock* at 967).

that Zerbo's assaultive conduct was foreseeable, or that any past assaults or threatened assaults made the incident reasonably predictable (*see Kranenberg v TKRS Pub, Inc.*, 99 AD3d 767, 768 [2012] ["an owner's duty to control the conduct of persons on its premises arises only when it has the opportunity to control such conduct, and is reasonably aware of the need for such control. Thus, the owner of a public establishment has no duty to protect patrons against unforeseeable and unexpected assaults . . . Here, the defendants . . . demonstrat(ed) that the assault was unexpected and that they could not have reasonably anticipated or prevented it . . . Contrary to the plaintiff's contention, the defendants established that they had no previous knowledge of the subject customer's propensity to assault the plaintiff or of any prior similar incidents in the bar which would make the incident reasonably predictable"] [citations and internal quotation marks omitted]). Indeed, Nash-Webber's uncontroverted testimony was that he was never made aware of any physical altercations or threats in connection with the "conflicts" regarding the identification process prior to the incident involving plaintiff.[3]

As to Pinnacle, plaintiff has failed to show that it breached any common-law duty by failing to institute a screening process in connection with hiring employees (*see Jackson v New York Univ. Downtown Hosp.*, 69 AD3d 801, 801-802 [2010] ["(t)here is no common-law duty to institute specific procedures for hiring employees unless the employer knows of facts that would lead a reasonably prudent person to investigate the prospective employee"] [citations and internal quotation marks omitted]). Plaintiff points to no specific factor involving Zerbo, or, for that matter, any other person employed by Pinnacle, which could reasonably have triggered an obligation to institute a screening process. Nor has plaintiff raised an issue of fact in opposition to defendants' prima facie showing that Zerbo was not acting in furtherance of defendants' business and within the scope of his employment when he intentionally assaulted plaintiff (*see Zanghi v Laborers' Intl. Union of N. Am., AFL-CIO*, 8 AD3d 1033, 1034 [2004] ["the mere fact that the incident occurred at the job site does not compel the conclusion that the assault was within the scope of (the assailant's) duties"]), or that his violent act was reasonably foreseeable (*see Milosevic v O'Donnell*, 28 Misc 3d 1229[A], 2010 NY Slip Op 51549[U] [2010]).

---

3. Nash-Webber further testified that he "would have expected to have heard about it."

Finally, the fact that plaintiff was deprived of a radio on the date of the incident does not raise an issue of fact. Plaintiff's deposition testimony demonstrated that Zerbo commenced assaulting him before he vainly reached for the radio, and its absence was thus not a substantial factor in causing his injuries. Plaintiff's differing account of how the incident unfolded as set forth in his affidavit cannot be used to avoid the consequences of his prior deposition testimony (see *Stancil v Supermarkets Gen.*, 16 AD3d 402 [2005]). Nothing in Murphy's conclusory affidavit, which speculates on the role of the underlying resentment of the workers, and the failure to provide plaintiff with a radio, raises an issue of fact.

In light of the record herein, the court rejects plaintiff's suggestion that it might wish to search the record and award him summary judgment (see *150 Broadway N.Y. Assoc., L.P. v Shandell*, 27 Misc 3d 1234[A], 2010 NY Slip Op 51035[U] [2010]).

The court has considered plaintiff's remaining contentions and finds them to be without merit.

Based upon the foregoing, the court grants defendants' motion for summary judgment and dismisses the complaint.