Peradotto, J.P.
(dissenting). Viewing the facts in the light most favorable to plaintiffs, and drawing every available inference in their favor (see De Lourdes Torres v Jones, 26 NY3d 742, 763 [2016]), I conclude that there are issues of fact that preclude granting summary judgment to defendants City of Buffalo and Buffalo Police Department (city defendants). I therefore respectfully dissent.
As an initial matter, contrary to the city defendants’ contention, plaintiffs did not improperly rely on a new theory of liability for negligence in opposition to the city defendants’ motion inasmuch as the allegations in plaintiffs’ complaints and the original verified bills of particulars were sufficient to encompass plaintiffs’ theory that the city defendants’ negligence arose from the inadequacy of the procedures used in retaining defendant police officer Gregg O’Shei (see Salvania v University of Rochester, 137 AD3d 1607, 1608 [2016]).
I disagree with the majority’s conclusion, however, that the city defendants met their initial burden of eliminating all triable issues of fact with regard to that theory of negligence. Rather, the record establishes that there is an issue of fact whether the city defendants should have known — had they conducted an adequate procedure in retaining O’Shei and returning him to patrol duty following a head injury he sustained in a motor vehicle accident in November 2003 — that O’Shei’s conduct was reasonably foreseeable, that is, that he had a propensity to engage in the type of harm alleged by plaintiffs (see generally N. X. v Cabrini Med. Ctr., 280 AD2d 34, 42-43 [2001], mod on other grounds 97 NY2d 247 [2002]; Diana F. v Velez, 126 AD3d 856, 856 [2015]; Travis v United Health Servs. Hosps., Inc., 23 AD3d 884, 884-885 [2005]). As plaintiffs contend, while the evidence submitted by the city defendants established that O’Shei was subjected to neurological testing following his first motor vehicle accident in 1997, and that the resulting records were reviewed by the police department’s then-commissioner of legal affairs in determining O’Shei’s fitness to return to work in 2001, the city defendants’ submissions failed to establish that O’Shei was subjected to any reten *1135 tion procedure before he was returned to work in 2004 following the second accident, shortly after which he began engaging in sexual misconduct directed against plaintiffs (see generally Doe v Chenango Val. Cent. School Dist., 92 AD3d 1016, 1017 [2012]; Jones v City of Buffalo, 267 AD2d 1101, 1102 [1999]). Indeed, the city defendants merely submitted a report from the City of Buffalo dated December 1, 2003 indicating that O’Shei had been removed from duty by the Erie County Medical Center and his primary physician following the second accident, and a letter stating that O’Shei was cleared to return to work by his primary physician as of April 23, 2004. The city defendants did not establish, however, who made the decision to return O’Shei to active duty, what actions were undertaken to evaluate O’Shei in reaching that decision, and whether such actions were reasonable (see generally Doe, 92 AD3d at 1017). The city defendants’ own submissions established that they were aware of O’Shei’s multiple traumatic brain injuries, including the 1997 injury that resulted in a lengthy absence from work of nearly five years during which time O’Shei received treatment for neuropsychological issues and the subsequent November 2003 “closed head injury” that resulted in another concussion. The city defendants’ submissions even included, for example, a 1998 report from a clinical neuropsychologist who examined O’Shei following the first accident and explained that, “[g]iven [O’Shei’s] history of multiple head injuries, and our understanding of the cumulative neuropsychological effects of head injuries, even a mild head injury could place [O’Shei] at significant neurologic risk.” Nonetheless, the city defendants’ submissions fail to establish whether O’Shei, after the second accident in which he sustained another head injury, was subjected to any neurological or psychological testing before being allowed to return to work by the city defendants. Contrary to the majority’s conclusion that the city defendants had no duty to investigate O’Shei’s fitness to return to work following the second accident, given the city defendants’ knowledge of O’Shei’s prior traumatic brain injury, his resulting absence from work, and his neuropsychological issues, I conclude that the city defendants were aware of facts that would lead a reasonably prudent person, in light of the subsequent concussive head injury, to investigate O’Shei’s neurological and psychological health further before retaining him as an active duty police officer (see “Jane Doe” v Goldweber, 112 AD3d 446, 447 [2013]; Jones, 267 AD2d at 1102; cf. Buck v Zwelling, 272 AD2d 895, 895 [2000]; Kenneth R. v Roman Catholic Diocese of Brooklyn, 229 AD2d 159, 163 [1997], cert denied 522 US 967 [1997], lv dismissed 91 NY2d 848 [1997]; see generally Chap *1136 man v Erie Ry. Co., 55 NY 579, 585-586 [1874]). Far from supporting the majority’s conclusion, the lack of evidence in the record indicating whether there was any change in O’Shei’s fitness to return to work following the second accident — information that may well have been developed by the city defendants upon conducting an adequate investigation — provides a reason to deny the city defendants’ motion for summary judgment, not a reason to grant it. In other words, the city defendants failed to eliminate a triable issue of fact whether they should have known, had they required neurological or psychological testing based on their knowledge of O’Shei’s physical and neuropsycho-logical history, that O’Shei was not fit to return to active duty as a police officer because he had a propensity to engage in improper disinhibited behavior, including the coerced sexual conduct alleged by plaintiffs (see “Jane Doe,” 112 AD3d at 447).
Even assuming, arguendo, that the city defendants met their initial burden on their motion, I conclude that plaintiffs raised a triable issue of fact. Plaintiffs submitted the expert affidavit of a neuropsychologist, who reviewed O’Shei’s medical records, personally examined him, and prepared a report. The neuropsy-chologist opined that had the city defendants engaged in appropriate psychological or neuropsychological testing following O’Shei’s last reported brain injury in November 2003, they would have learned that such injury resulted in frontal lobe dysfunction that, in the neuropsychologist’s medical opinion, ultimately led to the behavior O’Shei perpetrated against plaintiffs. In particular, the neuropsychologist opined that such testing would have revealed the propensity of O’Shei to potentially engage in “disinhibited behaviors” and that O’Shei’s inhibitions against engaging in sexual predatory behaviors were compromised by his brain injuries. In his report, the neuropsychologist noted, inter alia, that, given O’Shei’s documented history of frontal lobe and limbic brain impairments, and the potential for behavioral problems as a consequence of those conditions, it was prudent and necessary for the city defendants to order a detailed neuropsychological examination, which would have highlighted O’Shei’s behavioral liabilities. Thus, according to the neuropsychologist, given the well-documented multiple traumatic brain injuries sustained by O’Shei, a proper fitness-for-duty examination after the second accident and prior to O’Shei’s reinstatement as a police officer would have revealed his frontal lobe dysfunction, which would have precluded the city defendants from returning him to work and which, in turn, would have prevented him from engaging in the sexual misconduct directed against plaintiffs. Contrary to the majority’s determination, the neuropsycholo *1137 gist’s affidavit and incorporated report were not conclusory or speculative inasmuch as he averred that he had performed, and thus was familiar with, fitness-for-duty examinations for police officers, and he opined, in light of O’Shei’s history of traumatic brain injuries, that psychological, neuropsychological, neurologic, and SPECT examinations should have been performed. Given those submissions, I agree with plaintiffs that they raised an issue of fact whether the city defendants, had they conducted an adequate procedure, should have known about O’Shei’s propensity to engage in improper disinhibited behavior, including the alleged coerced sexual conduct alleged in this case.
I further disagree with the majority’s conclusion that there is no triable issue of fact whether the city defendants had actual knowledge of O’Shei’s conduct based on the information conveyed to the brother of one of the plaintiffs, who was also a City of Buffalo patrol officer. “The general rule is that knowledge acquired by an agent acting within the scope of his [or her] agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it” (Center v Hampton Affiliates, 66 NY2d 782, 784 [1985]; see Kirschner v KPMG LLP, 15 NY3d 446, 465 [2010]). Even assuming, arguendo, that the city defendants met their initial burden on their motion, I conclude that plaintiffs raised an issue of fact. The brother’s deposition testimony established that one of the plaintiffs had informed him that O’Shei was subjecting her to constant harassment and that he never reported the complaint to any superior officers because he did not think the plaintiff was credible. Plaintiffs also submitted the deposition of a police captain who testified that when a citizen makes a complaint to a police officer about another officer’s conduct, protocol requires that the officer take the information and provide a report to a supervisor in order to ensure that the report is submitted to the Internal Affairs Division of the police department. I recognize that a jury could conclude that the brother did not obtain the relevant information about O’Shei’s harassment of the plaintiff in the course of his employment (see Christopher S. v Douglaston Club, 275 AD2d 768, 769 [2000]), or that the information conveyed was not sufficiently specific to provide actual knowledge that O’Shei had engaged in coerced sexual activity with civilians, but this Court’s function on a motion for summary judgment is issue finding, not issue determination (see Bridenbaker v City of Buffalo, 137 AD3d 1729, 1731 [2016]), and the evidence must be viewed in the light most favorable to plaintiffs with every available inference drawn in their favor *1138 (see De Lourdes Torres, 26 NY3d at 763). Employing those principles, I conclude that plaintiffs raised an issue of fact whether the information received by the brother could be imputed to the city defendants “ ‘although the information [was] never actually communicated to [the principal]’ ” (Chaikovska v Ernst & Young, LLP, 78 AD3d 1661, 1663 [2010], quoting Center, 66 NY2d at 784).
Finally, with respect to the alternative ground for affirmance properly raised by the city defendants (see Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 544-546 [1983]; Matter of Harnischfeger v Moore, 56 AD3d 1131, 1131 [2008]), i.e., that they are entitled to governmental immunity, I conclude that Supreme Court did not abuse its discretion in declining to consider that untimely and unpleaded affirmative defense (see generally Mawardi v New York Prop. Ins. Underwriting Assn., 183 AD2d 758, 758 [1992]; Fulford v Baker Perkins, Inc., 100 AD2d 861, 861-862 [1984]).
In light of the foregoing, I would modify the order on the law by denying the city defendants’ motion for summary judgment to the extent that plaintiffs allege negligent retention, reinstate that claim, and otherwise affirm.
Present — Peradotto, J.P., Garni, Lindley, Curran and Troutman, JJ.