# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 92
Jose Rivera,
  Appellant,
  v.
State of New York,
  Respondent.

Stacey Van Malden, for appellant.
Patrick A. Woods, for respondent.

DiFIORE, Chief Judge:

Correction officers are tasked with the formidable and critical responsibility of protecting the safety of inmates and coworkers while maintaining order in correctional facilities (Arteaga v State of New York, 72 NY2d 212, 217 [1988]).  When that obligation

- 1 -

is breached, the State may be directly liable for injuries suffered by an inmate if it acted negligently, by failing to properly hire, train or supervise its employees, or vicariously liable if a culpable employee intentionally or negligently caused the injuries while acting in the scope of employment. The only question before us in this assault and battery case is whether the courts below erred in concluding the State met its summary judgment burden, establishing that it could not be liable under the doctrine of respondeat superior for injuries an inmate sustained during a brutal and unprovoked attack initiated by a correction officer. Because they did not, we affirm.

The relevant facts are not disputed. In January 2010, claimant was an inmate at a prison operated by the State Department of Correctional Services ("DOCS").[1] One morning when claimant entered the prison mess hall, correction officer Michael Wehby mocked his medically-issued protective helmet, which he was required to wear due to a seizure disorder. Claimant asked Wehby not to make fun of his helmet, fearing harassment by other inmates, and walked towards the food serving line. Wehby called claimant back to the doorway of the mess hall. When claimant obliged, Wehby grabbed claimant's jacket, pulled him outside the mess hall and began punching him on the face and head. Claimant was forced to his knees while Wehby hit and stomped on him, at which point two other correction officers—Officer Robert Femia and Sergeant Joseph LaTour—pushed claimant

---

[1] The New York State DOCS and the New York State Division of Parole merged to form the New York State Department of Corrections and Community Supervision ("DOCCS") in April 2011. Throughout this writing, we refer to DOCS and DOCCS interchangeably.

down and applied handcuffs. Wehby removed claimant's helmet and continued the assault, yelling expletives and saying, in substance, "I hope you die." While immobilized on the floor, claimant was punched, kneed and kicked in the head. At this juncture, Wehby struck claimant in the head with his radio with such force that the battery became dislodged and hit the wall. Eventually, claimant lost consciousness. During the prolonged, brutal attack, claimant did not resist or fight back, sustaining serious injuries. When claimant was eventually brought to the facility emergency room, medical staff were falsely told that his injuries were the result of a seizure. No mention was made that force had been used on him.

Soon after the incident, the DOCCS Inspector General's Office conducted an investigation. Although Wehby, Femia and LaTour gave statements to the Inspector General's Office containing facts contrary to those described above, their alternative version of events was deemed incredible. Among other disciplinary charges, all three were cited for providing false or misleading statements to the Inspector General; Wehby and LaTour were found to have engaged in the inappropriate use of force. Wehby was subsequently criminally prosecuted for the assault and, after a mistrial, pleaded guilty to official misconduct. All three correction officers lost their jobs (Wehby apparently had sufficient service credit to retire).

Over a year after the attack, claimant was granted permission from the Court of Claims to file a late notice of claim, authorizing the filing of this claim (No. 120113) against the State of New York pleading causes of action for assault and battery. The State

answered, denying all allegations for which a response was necessary.[2] Approximately seven months later, claimant filed a second claim against the State (No. 120949), alleging six causes of action—failure to provide adequate protection, gross negligence, excessive force, failure to properly train and supervise, negligence per se (for assault and battery), and intentional infliction of emotional harm. Shortly thereafter, this claim was voluntarily discontinued by stipulation of the parties.

Several years later, claimant—represented by new counsel—moved for summary judgment on the second claim, attaching only that claim to the motion.[3] Referencing several of the causes of action in the second, discontinued claim, claimant contended that DOCCS' dismissal of its employees for use of excessive force and providing false or misleading information to the Inspector General was an admission demonstrating the absence of material issues of fact. With respect to the State's vicarious liability for the acts of the correction officers, claimant argued, in summary fashion, that they acted within the

---

[2] The State moved to amend its answer in June 2015, seeking to assert three "affirmative defenses"—specifically, (1) that the State was not responsible for damages caused by persons acting outside the scope of their official duties or employment, (2) contributory negligence and (3) third party negligence or fault. The court granted the motion over claimant's objection, concluding that the "affirmative defenses" were "neither palpably insufficient nor patently devoid of merit" because, among other reasons, one could conclude Wehby's actions fell outside the scope of employment. Claimant contends the court abused its discretion in granting the motion. However, even absent amendment of the answer, claimant could not survive summary judgment without raising a triable question of fact on the scope of employment issue, a necessary element to support his assault and battery claim against the State, which was premised on the imposition of vicarious liability for the acts of employees.

[3] It appears new counsel believed the second claim was the operative pleading and did not recognize that it had been voluntarily discontinued.

scope of employment because they "were on duty, in uniform, supervising inmates" at the time of the assault. However, addressing the excessive force cause of action, claimant also asserted that there was "no justification whatsoever" for the attack on him. In support of the motion, claimant submitted, among other things, the Inspector General's report and an affidavit describing the assault in terms consistent with the description set forth above.

The State opposed claimant's summary judgment motion, noting that the second claim had never been properly served and had been dismissed, leaving pending only the first claim for assault and battery, and arguing that claimant's failure to attach the proper pleading to the motion required its denial. In its cross motion for summary judgment, the State contended, among other things, that there was no basis on which it could be held vicariously liable for assault and battery, citing claimant's descriptions of the incident, because Wehby's assault was outside the scope of employment. The State emphasized that the unjustified and unauthorized use of force was a clear departure from DOCCS policies and procedures governing use of force. Claimant did not oppose the State's motion for summary judgment.

The Court of Claims denied claimant's motion for summary judgment based on the failure to attach the correct claim but noted that, even if it considered claimant's arguments in relation to the pending assault and battery claim, the result would be the same. The court granted defendant's cross motion for summary judgment,[4] holding that Wehby's attack

---

[4] In its decision, the Court of Claims deemed both summary judgment motions to be untimely, but nevertheless addressed them on the merits. Claimant does not argue that reversal is warranted on this procedural basis.

was, as a matter of law, outside the scope of employment. After describing the elements of assault and battery, the court determined that, based on the undisputed facts, there was "no reasonable connection" between the assault and the duties normally performed by correction officers, deeming the attack a "substantial departure" from the normal methods of performance. Further, the court reasoned that the "abhorrent" and unprovoked attack was wholly attributable to personal motive, reflected by the lack of any plausible justification for such vicious force. Reasoning that DOCCS "could not [have] reasonably anticipate[d] that [Wehby] would act in such a heinous way," the court held there was "no viable basis upon which the State of New York may be held liable" for assault and battery. The Appellate Division affirmed.

In this Court, claimant contends that the Court of Claims erred in granting the State's summary judgment motion because the assault was within the scope of the correction officers' employment and thus, the State is liable under the doctrine of respondeat superior. We are unpersuaded. Based on the undisputed facts, consistently presented in the parties' summary judgment papers, no reasonable fact-finder could conclude that the assault constituted action taken within the scope of employment. Accordingly, the court did not err in determining that the State could not be held vicariously liable for the assault and battery.

Although claimant raised additional theories of recovery in his second claim, the only causes of action that remained pending—and which were the subject of the State's motion for summary judgment—were the intentional torts of assault and battery pleaded

in the first claim.  Battery is the unjustified touching of another person, without that person's consent, with the intent to cause a bodily contact that a reasonable person would find offensive; "[a]ssault involves putting a person in fear of a battery" (Jeffrey S. v Griffin, 1 NY3d 34, 41 n 2 [2003]; see Wende C. v United Methodist Church, N.Y. W. Area, 4 NY3d 293, 298 [2005] [citation omitted]; PJI2d 3:2, 3:3).  Thus, claimant sought to hold the State vicariously liable, on the basis of respondeat superior, for the intentional and offensive bodily contact perpetrated by its employees.

Under the common-law doctrine of respondeat superior, an employer—including the State—may be held vicariously liable for torts, including intentional torts, committed by employees acting within the scope of their employment (see Judith M. v Sisters of Charity Hosp., 93 NY2d 932, 933 [1999], citing Riviello v Waldron, 47 NY2d 297, 304 [1979], Jones v State of New York, 33 NY2d 275 [1973]).  "[T]he employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment" (Judith M., 93 NY2d at 933).  Liability attaches "for the tortious acts of . . . employees only if those acts were committed in furtherance of the employer's business and within the scope of employment" (Doe v Guthrie Clinic, Ltd., 22 NY3d 480, 484 [2014], quoting N.X. v Cabrini Med. Ctr., 97 NY2d 247, 251 [2002]).  Thus, if an employee "for purposes of [their] own departs from the line of . . . duty so that for the time being [their] acts constitute an abandonment of . . . service, the [employer] is not liable" (Judith M., 93 NY2d at 933 [internal quotation marks and citations omitted]).  In determining whether an employee acted within the scope of

employment for purposes of vicarious liability, we consider, among other factors, "the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated" (i.e., whether it was foreseeable) (Riviello, 47 NY2d at 303; see Judith M., 93 NY2d at 933). Whether an employee acted within the scope of employment is a fact-based inquiry (Riviello, 47 NY2d at 302-303). However, the question may be resolved on summary judgment, particularly when the material facts are undisputed (see Joseph v City of Buffalo, 83 NY2d 141 [1994]; Zuckerman v City of New York, 49 NY2d 557, 562-564 [1980]).

Accepting the version of events articulated in claimant's summary judgment motion papers, which largely mirrored that in the State's motion, the State met its burden of demonstrating that there was no basis to conclude that the assault constituted conduct within the scope of employment. Although the officers were on duty and the assault occurred at the prison while Wehby supervised inmates in the mess hall – satisfying the time, place and occasion factor – the other factors do not support respondeat superior liability. The brutal beating can be characterized neither as an "irregular[]" performance of duty nor a mere "disregard of instructions" – the attack was not in furtherance of any employer-related goal whatsoever (Riviello, 47 NY2d at 302).

We have long recognized that, in cases involving a use of force, whether an employee is acting within the scope of employment requires consideration of whether the employee was authorized to use force to effectuate the goals and duties of the employment (see Sauter v New York Tribune, Inc., 305 NY 442, 445 [1953]). In some cases, particularly those involving occupations for which some physical contact with others is permissible or even expected, it may be difficult to determine whether a challenged action falls far enough outside the boundaries attendant to the employment relationship such that the employee should be solely liable for their respective tortious conduct. In those cases – where the question may be one of degree and not kind – the vicarious liability issue may be appropriately left to the fact-finder. But this is not such a case.

Correction officers are authorized to use physical force against inmates in limited circumstances not present here, such as in self-defense or to suppress a revolt (see Correction Law § 137 [5]; 7 NYCRR 251-1.2 [a], [b]). DOCCS regulations require correction officers to exercise "[t]he greatest caution and conservative judgment" in determining whether physical force against an inmate is necessary (7 NYCRR 251-1.2 [a]). To be sure, correction officers at times use excessive force. Such conduct will not fall outside the scope of employment merely because it violates department rules or policies or crosses the line of sanctioned conduct. Under our multi-factored common-law test for determining respondeat superior liability, an employee's deviation from directions or governing standards is only one consideration in the analysis. Here, the gratuitous and utterly unauthorized use of force was so egregious as to constitute a significant departure

from the normal methods of performance of the duties of a correction officer as a matter of law. This was a malicious attack completely divorced from the employer's interests.

Further, there is no evidence in the record that DOCCS should – or could – have reasonably anticipated such a flagrant and unjustified use of force, in which, assisted by other officers who immobilized and handcuffed claimant, Wehby repeatedly punched and kicked him during a prolonged assault, removing claimant's protective helmet in order to facilitate more direct blows to his head. As such, based on the uncontested facts, it is evident that claimant's injuries were not caused by actions taken within the scope of employment and thus, there were no triable issues of fact as to the State's vicarious liability for assault and battery.[5]

---

[5] The dissent does not address whether there is a rational view of the evidence under which Wehby acted within the scope of employment, deeming it unnecessary to reach the central issue in this case. Instead, the dissent speculates that Femia and LaTour might have been acting in furtherance of legitimate penological interests when, "rather than stop the beating, they restrained claimant, rendering him helpless as the violence intensified" (dissenting op at 2). However, the record contains no credible evidence supporting such a view, nor did claimant argue in the Court of Claims that a distinction could (or should) be drawn between Wehby and the other officers under the doctrine of respondeat superior. Claimant did not allege that Femia and LaTour were unaware that Wehby's assault was a malicious and unprovoked attack but asserted, to the contrary, that all three officers acted without justification. Indeed, it is undisputed that Femia and LaTour actively assisted Wehby, facilitating an escalation in the severity of the assault. There is no basis to infer that Femia or LaTour misunderstood the events that precipitated the assault or perceived Wehby's "unbridled violence" to constitute (or have arisen out of) a legitimate use of force. The state met its prima facie burden on summary judgment by showing the absence of triable issues of fact given the dearth of evidence supporting the imposition of vicarious liability, even viewing the facts in the light most favorable to claimant. Defendant was not required to anticipate and refute unsubstantiated assertions relating to theories never pleaded that are untethered to the undisputed facts. To the extent Femia and LaTour caused injuries

Although claimant is unable to recover here based on the narrow theory pursued in the first claim, inmates who are unlawfully assaulted by correction officers are not without legal recourse. Even in the absence of respondeat superior liability for assault and battery, they may seek redress against the State in the Court of Claims on other tort theories, such as negligent hiring, training or supervision. Indeed, claimant here attempted to bring those causes of action in the Court of Claims when he filed the second claim, which was discontinued by stipulation of the parties. Moreover, correction officers who assault inmates may also be sued directly in Supreme Court (or federal court) under 42 USC § 1983 (see Haywood v Drown, 556 US 729 [2009]), or on common law tort theories for acts occurring outside the scope of employment.

We have examined claimant's remaining contentions and conclude that they are without merit.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

---

giving rise to liability under an assault and battery theory, no rational jury could conclude, absent speculation, that they did so while acting within the scope of employment.

Rivera v State of New York

No. 92

RIVERA, J. (dissenting):

After first taunting claimant and inmate Jose Rivera with jokes about his disabling condition, a correction officer viciously beat him, pummeling claimant's head and body as he lay handcuffed on the floor, yelling and cursing he wished claimant would die. Two

- 1 -

fellow officers responded as the altercation began, but rather than stop the beating, they restrained claimant, rendering him helpless as the violence intensified.

The State concedes that this assault is indefensible and in clear violation of correctional facility rules. Nonetheless, the State filed for summary judgment to dismiss the claim, seeking to avoid vicarious liability for the permanent physical and emotional injuries proximately caused by its employees' tortious conduct, on the ground that the officer who struck the blows acted outside the scope of his employment. Effectively eliding tort principles of vicarious liability for injuries proximately caused by the joint activity of the State's employees, the State argues that the claimant only seeks damages for the State's role as employer of the officer who struck the blows. This theory of the case is belied by the operative pleading, bill of particulars and the State's other submissions in support of the motion. Moreover, the State failed to meet its summary judgment burden because there are material triable issues of fact regarding whether the response by the two officers who restrained claimant falls within the scope of their duty to secure and maintain control at the prison by use of force if necessary. Therefore, because the order of the Appellate Division should be reversed, I dissent.

## I.

### A. The Attack On Claimant

Claimant Jose Rivera is an inmate who suffers from seizures for which he wears a protective helmet. Michael Wehby was a correction officer on duty at the prison mess hall

as claimant was waiting on line for breakfast when Wehby taunted him about the helmet. Claimant feared other inmates might follow suit and so he asked Wehby to stop. When Wehby then ordered claimant to come back to the hall entrance door, claimant first hesitated but complied. Wehby immediately grabbed claimant, dragged him behind the door and away from other inmates, then struck the first of several blows to claimant's head and body, causing him to fall to his knees. Within moments Sergeant Joseph LaTour, soon followed by correction officer Robert Femia, responded to the altercation.[1] LaTour pressed his knees into claimant's spine and pushed claimant's face down. While claimant tried to grab onto the carpet, LaTour and Femia handcuffed and physically pinned him to the floor. Wehby, who was unrelenting in his assault, continued to punch, knee and kick claimant in the head, and cursed at claimant, yelling that he wished him to die. After several minutes of raw uncontrolled violence, and while LaTour and Femia restrained the prone claimant, Wehby ripped off the protective helmet and punched and kicked claimant in the head dozens more times, including hitting him in the head repeatedly with his radio with such force that the batteries flew out and hit the wall.

B.    The Correction Officers' Disciplinary Actions And Wehby's Criminal Prosecution

After an investigation the Department of Correctional Services Inspector General substantiated a complaint against the three officers, and the Department issued each a

---

[1] The record contains different spellings of LaTour's name. For consistency, except for direct quotations, I use the spelling adopted by the majority.

Notice of Discipline. The Department found that before and during the Inspector General's investigation all three lied about the incident details. Wehby and LaTour were found to have used inappropriate force on claimant. LaTour was also disciplined for failing to stop the incident and "prevent the inappropriate use of force on an inmate by staff under [his] supervision," and because he "actually participated in this inappropriate use of force." LaTour and Femia were terminated from employment for their "totally inappropriate" and "very serious" "misconduct."

The County District Attorney and New York State Police investigated claimant's allegations of assault "by Three Corrections [sic] Officers, one of which [sic] held the rank of Sergeant." The investigator found that Wehby was conducting a count of inmates entering the dining hall when claimant walked in. Claimant told the investigator that as he walked past, Wehby mocked his helmet and so he asked Wehby not to make comments in front of the other inmates. "Wehby then became upset and began to assault him," and "Sgt. Latour and Officer Femia assisted Officer Wehby in the assault." The investigator interviewed correction officer and inmate witnesses and found that they corroborated claimant's account of events in full, but during the course of the interviews "it was stated Inmate Rivera was not polite in his response to Officer Wehby's comment" about the helmet.

Wehby was charged by a Grand Jury and arrested for assault in the second degree, attempted assault in the second degree, and assault in the third degree. The Incident Report

noted that unlike Wehby, the investigation revealed that LaTour and Femia were not criminally culpable and would "not be prosecuted for their role in the incident."

At Wehby's trial, claimant described in detail how Wehby punched, kicked and hit his body and head and removed his helmet to inflict the blow with the radio. Although the State submitted to the Court of Claims partial excerpts of the People's direct examination of claimant which focused on the actions of Wehby, at various points in those excerpts claimant also described LaTour and Femia's participation in the assault:

"Q.     Does Sergeant LaTour help Officer Wehby in some fashion?

A.      Yeah. He used his knee. His knee, it's called a knee brace.

Q.      Where does he put his knee?

A.      Around your spine.

Q.      Did he force you to the floor?

A.      Him and, you know, yeah.

. . .

Q.      And what did LaTour and what did Femia do to you?

A.      They were both on my back, trying to get the other hand.

Q.      Trying to cuff you?

A.      Yeah, cuff me.

Q.      Are you on your stomach?

A.      Yes, sir.

Q.      Which hand, if any, did they get cuffed?

A.      They got cuffed one, then they cuffed the other one.

Q.      Now, you put your left hand behind your back first?

A.      Right.

Q.      Who cuffed your left hand?

A.      LaTour.

Q.      Now, where was your right hand after your left hand was cuffed?

A.      I was trying—to be honest with you, I'm not really sure.  I was trying to grab, grab onto anything.

. . .

Q.      Did [LaTour and Femia] get you cuffed?

A.      Yeah.

Q.      Now, what happened after you were cuffed?

A.      [Wehby] got in front around me and ripped my helmet off.

. . .

Q.      So it was Corrections Officer Wehby that inflicted whatever injury you had, according to your testimony?

A.      Yeah.

. . .

Q.      Not LaTour?

A.      LaTour, only thing I can say about LaTour, he should have stopped it.  That's it.  He had the power to stop it.  He should have stopped it.

. . .

Q.     Did you ever hear anyone yelling: Get the other prisoners out of here?

A.     Yeah.  LaTour."

The jury deadlocked.  Wehby later pleaded guilty to a misdemeanor count of official misconduct and retired as a condition of the plea.  At the plea colloquy, Wehby admitted that in violation of the Penal Law he "committed some act relating to [his] employment which was an unauthorized exercise of [his] official functions and that [he] knew that such act was unauthorized."  The court sentenced Wehby to a conditional discharge and imposed a $1,000 fine.

## II.

Claimant filed the instant action against the State in the Court of Claims, alleging, in relevant part:

"2.     The claim arose on January 15, 2010, at approximately 7:10 p.m., in the entrance and foyer of the 2-Side Mess Hall at the Mid-State Correctional Facility located at 9005 Old [R]iver Road, Marcy, New York 13403-0216.

"3.     The claim arose under the following circumstances.

"Claimant was attacked and beaten about the head and body as he was entering the 2-Side Mess Hall by members of the State of New York Department of Correctional Services, including, but not limited to, Sergeant

Joseph La Tour and Correction Officers Michael Wehby, Robert Femia, and 'John Doe' #'s 1-3. Claimant so designates the Defendants Corrections Officers 'John Doe' #'s 1-3 because their actually [sic] identities, shield numbers and commands have not been made known to the Claimant.

"4.     As a direct and proximate result of this malicious assault, Claimant has suffered permanent injury to head and body, continues to experience pain and suffering and emotional distress."

He subsequently filed a second claim against the State alleging, inter alia, the State's failure to properly train and supervise correction officers. Claimant stipulated to the discontinuance with prejudice of this second claim.[2]

In his verified bill of particulars, claimant asserted that "Correctional Officer Michael Wehby, Correctional Officer Robert Femia, [and] Sergeant Joseph LA Tour" were the three individuals who assaulted him. In response to the State's request that he set forth "the exact manner in which Claimant alleges he was assaulted," claimant provided a detailed description of the three officers' actions:

"Claimant was punched several times about the right side of the head while being pushed and pulled down to the ground. Claimant was handcuffed behind his back while being forced to lie on his front side, while at the same

---

[2] In its written opinion on the parties' cross-motions for summary judgment the Court of Claims added that while claimant stipulated to the discontinuance, the court disagreed with the State's argument that the second pleading should be dismissed as redundant of the first.

time trying to avoid Correctional Officer Wehby's punching on the right side of the head. Claimant was also being assaulted with the Correctional Officer's knees, as well as being kicked about the face, the back of the head, and right side of the head. . . . Correction Officer Femia continuously pushed his knee into the Claimant's lower back, and alternatively, the Claimant's shoulder blades, while the Claimant was handcuffed from behind. At no time did Correction Officer Femia attempt to stop Correction Officer Wehby's assault on the Claimant."

Claimant cross-referenced this description in his answer to the State's request for a "statement of each and every act of negligence, commission or omission which Claimant will claim as the basis of the alleged negligence of the [State]."

By way of response to questions regarding the State's alleged notification of "every condition, circumstance or state of facts" which caused or contributed to the assault, claimant stated that "Wehby, Femia, and LA Tour all had actual notice of the Claimant's condition as they committed the assault on the Claimant" and that, as employees of the State and on its behalf, "Robert Femia, Michael Wehby and Joseph LA Tour, received actual notice of the alleged assault at the time they committed the actual assault on Claimant." Claimant further clarified that his claim was not based on constructive notice because the State had "direct notice of the assault by virtue of the assault being perpetrated

by Correction Officers Robert Femia, Michael Wehby, and Sergeant La Tour, employees of The State of New York."

Almost four years after claimant filed the instant action and his verified bill of particulars, the State moved to amend its verified answer to assert three affirmative defenses, including that the officers acted outside the scope of their official duties or employment. The court granted the motion over claimant's objection.

Two years later, claimant moved and the State cross moved for summary judgment. In claimant's motion he argued that the Inspector General's report and the disciplinary action taken against Wehby, LaTour and Femia were effectively concessions that the assault occurred as claimant alleged and established the State's liability for the actions of its employees. Although the motion referred to allegations contained in the withdrawn second claim, the motion also referred to the assault and battery cause of action. In that regard, claimant argued that the officers "had no justification whatsoever for their use of force against Claimant"; that "Wehby, Latour and Femia were all found to have falsified records and lied under oath in an effort to mask their conduct"; and that those facts are established "in the form of admissions by the [State]," such that the State had "no defense to those claims, and summary judgment must be granted" in favor of claimant. Claimant also observed that the State had cited "use of inappropriate force" as a reason for dismissing

both Wehby and LaTour, and "provision of false and/or misleading information regarding the inappropriate use of force" as a reason for dismissing all three officers.[3]

In response to the State's scope-of-employment defense, claimant argued that "the corrections [sic] officers in question were on duty, in uniform, supervising inmates, [which] is precisely their job description. As a result, as a matter of law, Defendant were in within [sic] the scope of their employment at the time of the incident."[4]

The State supported its motion with copies of the pleadings; copies of the court's procedural opinions in the case;[5] selected excerpts of claimant's testimony at Wehby's criminal trial; a copy of the district attorney's investigatory report; and copies of Wehby's indictment, plea hearing minutes, and sentencing hearing minutes. The State also relied on claimant's affidavit attached to his moving papers. The State argued first that because claimant had testified at his criminal trial that Wehby inflicted the blows that caused his injuries, the State could only be vicariously liable for Wehby's actions, and second that it was not liable for Wehby's actions because his assault on claimant was completely

---

[3] Claimant's description of the assault as committed by all three officers draws, in part, on details from the complaint, bill of particulars and his testimony at Wehby's criminal trial. For example, claimant stated: "While [claimant was] held to the floor by Officer Femia and Sgt. Latour, Wehby stomped on Claimant's head," and stated he hoped claimant would die.

[4] Claimant affirmed that "the only people who were involved in this incident were the three corrections [sic] officers and Claimant."

[5] These included an order granting claimant's motion for permission to file a late claim and an order granting the State's motion to amend its answer and partially granting claimant's motion for the issuance of three subpoenas duces tecum.

unprovoked and unrelated to any goal to serve the interests of the State as Wehby's employer, and thus outside the scope of Wehby's employment.

The Court of Claims denied claimant's motion for failing to comply with the technical requirements of CPLR 3212(b) but stated that denial was appropriate on the merits because Wehby did not act within the scope of his employment, making no mention of and reaching no conclusion as to the other two officers in this regard. The court determined that in the interest of judicial expediency it would grant the State summary judgment based on its meritorious affirmative defense, notwithstanding the unexplained tardiness of its submission. The Appellate Division summarily affirmed the order granting summary judgment to the State and the order granting the State leave to amend its answer for the reasons stated by the Court of Claims (162 AD3d 1571 [4th Dept 2018]). We granted leave to appeal (32 NY3d 902 [2018]), and because the State failed to meet its prima facie burden on its summary judgment motion, I would reverse.

III.

On appeal to us, claimant argues that the Court of Claims abused its discretion in granting the State's motion to amend its verified answer, despite the alleged prejudice to claimant, and because correction officers Wehby, LaTour and Femia were acting within the scope of their employment the State is not entitled to summary judgment solely on that basis. There is no merit to his first claim, but as I discuss, there are material triable issues

of fact as to whether LaTour and Femia acted within the scope of their employment that foreclose summary judgment.

### A.  The State's Motion To Amend Its Verified Answer

CPLR 3025 provides that leave "shall be freely given upon such terms as may be just."  We have previously stated "that, absent prejudice, courts are free to permit amendment even after trial" (Kimso Apts., LLC v Gandhi, 24 NY3d 403, 411 [2014]). Whether to grant the motion is within the sound discretion of the court which has considerable latitude in this regard (id.).  Thus, we review these decisions for abuse of discretion as a matter of law (id.).

Here, claimant argues he was prejudiced because the amendment was granted after expiration of the statute of limitations on claims against the individual officers and because the affirmative defense leads to dismissal of his current action against the State.  Claimant's strategic decision not to pursue claims against the officers is not prejudice flowing from the State's late assertion of the affirmative defense.  There is nothing in the record that suggests claimant could not pursue these claims before the time to file expired.  Instead, counsel sued only the State in the Court of Claims, with the attendant risk that if claimant's action was unsuccessful, he would be left without a remedy.  Nor does the merit of the affirmative defense constitute prejudice within the meaning of our caselaw. The prejudice requirement avoids harm from surprise to the nonmovant and is a counterweight to the generous amendment standard; it is not a shield against meritorious claims or defenses.

Therefore, claimant's challenge to the order granting the State's motion to amend its verified answer is without merit.[6]

B.   The State's Failure To Satisfy Its Prima Facie Burden To Show That No Factual
     Questions Exist As To The Three Correction Officers' Scope Of Employment

     1. Summary Judgment Standard

     "Summary judgment is a drastic remedy" (Vega v Restani Constr. Corp., 18 NY3d 502, 503 [2012]), and a party is entitled to summary judgment only if there is no triable issue of fact such that the movant is entitled to judgment as a matter of law, viewing the facts "in the light most favorable to the plaintiff" and drawing all "available inference[s] . . . in the plaintiff's favor" (De Lourdes Torres v Jones, 26 NY3d 742, 762-763 [2016]). More specifically, the court considers whether the movant has excluded all "material triable issues of fact . . . as to the claims . . . asserted against the defendant in the . . . complaint as amplified by the bill of particulars" (Alvarez v Prospect Hosp., 68 NY2d 320, 325 [1986]; accord Pullman v Silverman, 28 NY3d 1060, 1066 [2016] [Stein, J., dissenting]).

     If the defendant fails to make a prima facie showing that no material issues of fact remain in the case, the court must deny summary judgment without considering the sufficiency of the opposing papers (see Voss v Netherlands Ins. Co., 22 NY3d 728, 734

---

[6] Given my conclusion that the order granting the request to amend the answer did not prejudice claimant, I do not address the State's alternative argument that the amendment was, in any case, unnecessary because the Court of Claims lacks jurisdiction if an employee's actions are not within the scope of employment.

[2014]; <u>Winegrad v New York University Medical Center</u>, 64 NY2d 851, 853 [1985]; <u>PC 444, LLC v Priority Pediatrics, PLLC</u>, 133 AD3d 645, 646 [2d Dept 2015]), or for that matter whether the nonmoving party has opposed the motion at all (<u>see</u> <u>e.g.</u> <u>Exit Empire Realty v Zilelian</u>, 137 AD3d 742 [2d Dept 2016] [affirming denial of unopposed summary judgment motion where movant failed to demonstrate absence of material issues of fact]; <u>see</u> <u>also</u> <u>Myers v Bartholomew</u>, 91 NY2d 630 [1998]).  In other words, even in the face of a nonmovant's silence or a poorly drafted response, summary judgment may not be granted unless the movant has met their burden of establishing entitlement to judgment as a matter of law.[7]

    2.  <u>The State's Vicarious Liability For Its Employees' Torts</u>

    Under the doctrine of respondeat superior, an employer is vicariously liable for an employee's torts committed within the scope of the employee's employment (<u>Riviello v</u>

---

[7] Although the State offered no excuse for its untimely summary judgment motion, the Court of Claims considered the submission because it found the State's affirmative defense meritorious.  This was error because unlike the generous rules that permit a party to amend a pleading years into litigation so long as there is no prejudice to the nonmovant, a late motion for summary judgment requires a showing of good cause for failing to comply with the statutory filing deadline (CPLR 3212 [a]).  The court here acted in contravention of <u>Brill v City of New York</u>, which held that trial courts may only permit late summary judgment motions when the movant gives "a satisfactory explanation for the untimeliness—rather than simply permitting meritorious, nonprejudicial filings, however tardy" (<u>Brill v City of New York</u>, 2 NY3d 650, 652 [2004]).
However, claimant did not challenge the motion in the Court of Claims or the Appellate Division on the basis of <u>Brill</u>.  Nor does he press the issue in this Court.  Accordingly, the issue is not properly before us.  Nevertheless, it bears repeating <u>Brill</u>'s core holding that a late summary judgment motion, even if meritorious, cannot be considered in the absence of a showing of good cause for the delay in filing that application (<u>id.</u>; <u>accord</u> <u>Miceli v State Farm Mut. Auto. Ins. Co.</u>, 3 NY3d 725 [2004]).

Waldron, 47 NY2d 297, 302 [1979]).  As we have recognized, the State of New York may be held liable "under traditional concepts of respondeat superior" in its capacity as an employer (Frazier v State of New York, 64 NY2d 802, 803 [1985]).  Respondeat superior is grounded in the theory that the employer who can exercise control over an employee's actions should be liable for the employee's tortious conduct (Riviello, 47 NY2d at 302).  Over time, "[s]ocial policy has wrought a measure of relaxation of the traditional confines of the doctrine" (id.).  "[T]he test has come to be 'whether the act was done while the [employee] was doing [the employer's] work, no matter how irregularly, or with what disregard of instructions'" (id. [citation omitted]).  The rule turns on the facts of the specific case and "encompasses the far more elastic idea of liability for 'any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of [an] act'" undertaken at the employer's direction (id. at 303 [citation omitted]).

As this Court has often reiterated, "because whether a particular act was within the scope of the [worker's] employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury" (id.; see also Rounds v Delaware, Lackawanna & W. R.R. Co., 64 NY 129, 137-138 [1876]; Sharp v Erie R. Co., 184 NY 100, 104-105 [1906] [whether a tortfeasor "was acting at the time as the servant of the person sought to be charged frequently depends on such a variety of facts that it falls outside of any definite rule, and for that reason becomes, under proper instructions, a question of fact for the jury" (internal quotation marks omitted)]).  In other words, the scope of employment issue should

be submitted to the finder of fact unless "the answer is clearly indicated" (Restatement

[Second] of Agency § 228, Comment *d*).

3. Riviello Factors And The Restatement Approach

This Court in Riviello set forth a nonexclusive list of factors—derived from a longer

list in the Restatement (Second) of Agency[8]—relevant to deciding whether an employee

acted within the scope of employment: "the connection between the time, place and

occasion for the act; the history of the relationship between employer and employee as

spelled out in actual practice; whether the act is one commonly done by such an employee;

---

[8] Restatement (Second) of Agency § 229 (2) provides that,

> "[i]n determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
>
> (a) whether or not the act is one commonly done by such servants;
> (b) the time, place and purpose of the act;
> (c) the previous relations between the master and the servant;
> (d) the extent to which the business of the master is apportioned between different servants;
> (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
> (f) whether or not the master has reason to expect that such an act will be done;
> (g) the similarity in quality of the act done to the act authorized;
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
> (i) the extent of departure from the normal method of accomplishing an authorized result; and
> (j) whether or not the act is seriously criminal."

the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated" (Riviello, 47 NY2d at 303, citing Restatement [Second] of Agency § 229).

The Restatement (Third) of Agency provides a substantially equivalent but more concise articulation of the boundaries of employee conduct for purposes of an employer's vicarious liability.[9]  It explains that "an employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control.  An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer" (Restatement [Third] of Agency § 7.07 [2]).  "An independent course of conduct represents a departure from, not an escalation of, conduct involved in performing assigned work or other conduct that an employer permits or controls" (id. Comment b).  That rule squares with the traditional agency concerns that animate the Riviello factors, as well as prior holdings of this Court that where the employee acted out of "solely personal motives," rather than to serve any interest of an employer, the employee does not act within the scope of employment as a matter of law (N.X. v Cabrini Med. Ctr., 97 NY2d 247, 251-252 [2002]; see Judith M. v Sisters of Charity Hosp., 93

---

[9] The commentary to the Restatement (Third) explains that its formulation of the doctrine differs from that in the Restatement (Second) only "because it is phrased in more general terms" (Restatement [Third] of Agency § 7.07, Comment b).

NY2d 932 [1999]).  The rule applies to claimant's action against the State (see Restatement [Third] of Agency § 7.07 [2]).

Under these general agency principles and our decisional law the scope of employment requirement is best understood as "reliev[ing] an employer from liability for an employee's torts when the employer neither benefits from the tortious conduct nor has the means to control the employee's behavior" (Doe v Guthrie, 22 NY3d 480, 487 [2014] [Rivera, J., dissenting]).  Moreover, where the employee's conduct is so extreme that it simply cannot be foreseen or prevented by the employer, as in cases of rape (see e.g. Cornell v State, 46 NY2d 1032 [1979]), or where the employee attacks the plaintiff without the slightest hint of an employment-related justification (see e.g. Adams v New York City Transit Authority, 88 NY2d 116 [1996] [unexplained violent attack against stranger]; Sauter v New York Tribune, 305 NY 442 [1953] [road rage incident]), the law does not recognize an employer's vicarious liability for the employee's torts.

4.   Material Triable Issues Of Fact As To The Correction Officers' Scope Of Employment

Applying these principles and the Riviello factors here, there are material triable issues of fact as to whether LaTour and Femia acted within the scope of their employment. Therefore, the State's summary judgment motion should be denied.

To begin, contrary to the State's argument, because claimant has consistently maintained that all three officers acted within the scope of their employment, he has not limited his action against the State only to liability for Wehby's conduct.[10] Claimant's pleading, as amplified by his verified bill of particulars, is premised on the State's vicarious liability for tortious acts by Wehby, LaTour and Femia that proximately caused claimant's injuries. The pleading identified the three officers as having assaulted him, and claimant's bill of particulars—responding to the State's questions—also expressly states that all three correction officers "assaulted the claimant" and that the individual acts of all three officers were "the basis of the alleged negligence of the [State]." The State filed its summary judgment motion with full knowledge of the nature of the claim and the employee actors identified by claimant and nevertheless the State chose to focus only on Wehby. As such, the State failed to establish the absence of factual questions regarding the scope of employment of the other two officers.

The State mischaracterizes claimant's testimony at Wehby's criminal trial in support of its argument that claimant only identified Wehby as the attacker. While claimant testified in response to the prosecutor's questions that Wehby began the beating, inflicted

---

[10] The majority does not disagree with this conclusion, but states—without explanation— that whether Wehby was acting within the scope of his employment is "the central issue in this case" (majority op at 10 n 5). Of course, because claimant has always asserted that the State was liable for the actions of all three officers, even though Wehby struck the first and the most severe blows, the State had the burden on its summary judgment motion to come forward with a showing that excludes triable issues of fact as to each of them. That is the only genuine issue in this appeal. The majority cannot override the summary judgment standard by vaguely announcing that something else is the "central issue."

numerous blows and removed claimant's helmet to hit him on the head with the radio, claimant also identified LaTour and Femia as having participated in the attack, forcefully pinning him to the floor and putting him in handcuffs to restrain his movements.

Another way to consider the problem is through the lens of the liability of the individual officers. As recognized by the majority (majority op at 10-11), claimant could have sued the individual officers for their respective parts in the assault. Thus, the State, as the employer, may be liable for their individual tortious conduct if they acted within the scope of their employment.

In fact, several theories of liability are applicable where more than one employee participates in conduct that proximately causes a claimant's injury. For example, where defendants act in concert with a principal wrongdoer, such as by "lend[ing] aid or encouragement," the defendants are each "fully responsible for the [victim's] injuries even though" the other joint tortfeasors may not have wielded the instrumentality of harm (Bichler v Eli Lilly & Co., 55 NY2d 571, 580–581 [1982] [internal quotation marks removed]). Under this theory, a defendant may be liable for assault even where the defendant did not "str[ike] the blows that caused [the plaintiff's] most significant injury" (D'Elia v 58-35 Utopia Parkway Corp., 43 AD3d 976, 978 [2d Dept 2007]). Aiding-and-abetting liability is yet another distinct theory supporting the State's vicarious liability for LaTour and Femia because "[a]iders and abettors of an assault and battery are equally liable with the actual assailant" (CJS Assault § 16; see McKiernan v Vaccaro, 168 AD3d 827 [2d Dept 2019]).

The State argues in the alternative that even if we consider the conduct of all three officers, they acted outside the scope of their employment because Wehby's actions were heinous and unforeseeable and LaTour and Femia's assistance in a brutal assault was no more part of their duties than committing the assault. This argument misses the mark. In a case involving more than one tortfeasor, the employer—here the State—bears responsibility for all its employees' actions, whether viewed individually or jointly. The Court has never held that the State or any employer may avoid liability for the actions of multiple employees merely by establishing that one of the named employees acted outside the scope of employment. Such approach would be incompatible with a rule that depends on each employee's intent, as this State's scope-of-employment test does (see Judith M., 93 NY2d 932; accord Restatement [Third] of Agency § 7.07 [2]).[11] On this appeal from the grant of the State's summary judgment motion, the question is not whether they facilitated Wehby's assault—they did—but whether the circumstances that triggered their actions, and their participation in the assault, might bring their acts within the scope of their employment. We do not have to resolve the question whether LaTour and Femia attacked

---

[11] For this reason, the majority's complaint that claimant did not make an explicit argument in the Court of Claims that the three officers should be treated as individuals falls flat. Consideration of each tortfeasor's intent is required by well-established principles of scope-of-employment law. In any case, the burden was on the State to exclude all triable issues of fact regarding the scope of employment of every correction officer who claimant named as a participant in the attack, and because the State failed to do so, claimant bears no burden to affirmatively identify disputed factual questions (Winegrad, 64 NY2d at 853).

claimant or helped Wehby, but rather only whether there are factual questions as to their role in the assault.

Assuming without deciding that Wehby as the officer who delivered the blows acted without provocation, in pursuit of his own personal interests, and in no way furthering the goals of his employer, such that he acted outside the scope of his employment, there are material triable issues of fact as to whether the same can be said about LaTour and Femia. It is undisputed LaTour and Femia participated in the assault by restraining claimant. What is unclear is what LaTour and Femia observed immediately before Wehby first hit claimant and whether they acted in response to the altercation between claimant and Wehby as opposed to assisting Wehby in an unprovoked attack, even if Wehby's use of force itself was in violation of departmental regulations. In other words, these two officers might have seen only an altercation between a fellow correction officer and an inmate, and thus come to the assistance of Wehby, initially intending to restrain claimant, in furtherance of the State's interests in maintaining order through the use of force.[12]

---

[12] That claimant did not proffer this sequence of events in briefing below (majority op at 10 n 5) is irrelevant to whether the State carried its burden on summary judgment. Indeed, claimant did not submit *any* response to the State's summary judgment motion. Nevertheless, once again, if the State's showing did not remove all triable issues of material fact, summary judgment must be denied (see Winegrad, 64 NY2d at 853).

To the extent the majority means that claimant's operative Notice of Claim did not include allegations "that Femia and LaTour were unaware that Wehby's assault was a malicious and unprovoked attack" but, rather, alleged that "all three officers acted without justification" (majority op at 10 n 5), the majority is simply wrong. The Notice of Claim does not include any allegations one way or the other about whether the two officers thought incorrectly that they were serving their employer's interests by restraining claimant (see generally supra at 7-8). The majority further appears to conflate the concept of

As the legislature and this Court have recognized, a correctional facility is a dangerous place, and correction officers have to quickly respond to sudden outbursts of violence and inmate disobedience to maintain control (see majority op at 1; Matter of Walsh v New York State Comptroller, slip op at 16 [decided today] [Rivera, J., dissenting] [discussing legislation to provide correction officers with disability benefits because such state employees must face the constant threat of "'altercations between inmates and between inmates and officers'" (quoting Mem of Support, Bill Jacket, L 1996, ch 722, at 4)]). The State authorizes violence and a display of force in these types of situations, albeit in a measure appropriate to the circumstances (see 7 NYCRR 251-1.2). It is wholly foreseeable that officers would respond to restrain an inmate during a struggle with another correction officer. Indeed, correction officers are specifically authorized to use force against an inmate "to prevent injury to person or property" or "enforce compliance with a lawful direction," and are even permitted under applicable regulations to use weapons (other than firearms) upon an inmate "to quell a disturbance" (id. § 251-1.2 [e]). Here, claimant testified at Wehby's criminal trial that he heard LaTour tell the inmates to leave the area—which could indicate that his intent was to avoid a riot by other inmates.

---

'unjustified' use of force with that of conduct outside the scope of employment, which is of course not the law of this State: use of force may be unjustified or excessive and still within the scope of employment (see Sims v Bergamo, 3 NY2d 531 [1957]; Peck v New York Cent. & Hudson Riv. R.R. Co., 70 NY 587, 591 [1877]; Cepeda v Coughlin, 128 AD2d 995, 996 [3d Dept 1987]).

Although claimant withdrew with prejudice his claims based on the State's alleged inadequate training and supervision, and never sued LaTour for failing to stop the assault in his capacity as the Sergeant on duty, the evidence shows that LaTour pushed claimant to the floor and restrained him, and—as claimant testified at the criminal trial—LaTour never stopped Wehby. Thus, there is a material triable question of fact as to whether Femia could have believed that the use of violence was sanctioned by his supervisor, bringing his actions within the scope of employment (see Cruz v New York, 24 F Supp 3d 299, 310 [WD NY 2014] [correction officers' assault on inmate was "clearly" within the scope of the officers' employment because, among other things, the acts were "condoned by their supervisors"]; Johnson v NY DOCSCS, 2013 WL 5347468, at *3 [WD NY 2013] [same]; see also Lundberg v State, 25 NY2d 467, 470 [1969] ["An employee acts in the scope of his employment when he is doing something in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities"]; Zwibel v Midway Automotive Group, 2012 WL 12269062 [Sup Ct NY County 2012]; Otis Eng'g Corp. v Clark, 668 SW2d 307 [Tex 1983] [where employer assented to employee driving home drunk from a work event, employer was liable for resulting accident]).

The majority's conclusion that all three officers acted outside the scope of their employment because of the heinous nature and unforeseeability of this brutal assault (majority op at 8-10) adopts the State's position that assisting Wehby's beating of claimant means that they too acted outside of their employment. This view collapses all the

individual acts to focus on Wehby as the correction officer who inflicted the blows against claimant, without taking into consideration—as we must under respondeat superior and general tort principles—the State employer's liability for the separate conduct of the officers who responded to the altercation. It also ignores the extent to which LaTour and Femia's actions may have constituted an "escalation" from what they perceived to be the proper restraint of an inmate involved in an altercation with an officer (see Restatement [Third] of Agency § 7.07 Comment *b*; cf. De Wald v Seidenberg, 297 NY 335 [1948]).

The majority further concludes that summary judgment should be granted for the State because the State's prima facie case does not include evidence that LaTour and Femia "misunderstood the events that precipitated the assault or perceived Wehby's 'unbridled violence' to constitute (or have arisen out of) a legitimate use of force" (majority op at 10 n 5). That gets the summary judgment standard exactly backward. If the State's prima facie case does not *remove* any triable question as to what prompted the intervention by LaTour and Femia—and I agree with the majority that it does not—then the State has failed to carry its burden, and summary judgment must be denied (see Winegrad, 64 NY2d at 853).[13]

_____

[13] The majority's troubling burden-shifting approach not only is contrary to our well-established legal standard, but also ignores the facts. For example, given that the State presented no evidence of any reason why LaTour or Femia would want to participate in a gratuitous beating, it is more than rational (and would not require "speculation") to infer that the two officers intervened thinking there was a legitimate reason to restrain claimant at the outset, rather than out of unexplained bloodlust. Similarly, the State's submissions show that the two officers were elsewhere in the room supervising inmates (and not their colleagues) when the beating began, which suggests that they may not have witnessed "the

Even tracking the majority's approach to the <u>Riviello</u> factors demonstrates the majority's failure to properly analyze the record before us. Our review of this appeal requires us to view the facts in the light most favorable to claimant (see <u>De Lourdes Torres</u>, 26 NY3d at 762-763; <u>Vega</u>, 18 NY3d at 503). With this in mind, as to the first factor (the time, place, and occasion), LaTour and Femia were in uniform and on duty at the time of the assault, counting inmates entering the mess hall. The second factor is unenlightening as we do not have employment history on these officers. The third factor considers whether the act is commonly done by correction officers. As discussed, a correction officer supervises inmates and is authorized to use force in furtherance of their duties, but only as appropriate and when necessary (see 7 NYCRR 251-1.2). LaTour and Femia's conduct to restrain an inmate during an altercation with a correction officer, and to maintain control of the facility and other inmates, are a necessary part of their duties. The fourth factor considers "the extent of departure from normal methods of performance" which is another way of looking at whether the employee's acts were other than the mere escalation of sanctioned conduct. On this appeal, this factor turns on the difference between excessive force and unbridled violence wholly outside the bounds of force that could be necessary to maintain control and order in a correctional setting. Even if Wehby did not act "in furtherance of any employer-related goal whatsoever" (majority op at 8), on this record there are factual questions as to whether the same holds true for LaTour and Femia.

---

events that precipitated the assault" at all (majority op at 10 n 5). As such, the record simply does not support the majority's premise that there is "no evidence" of facts that would support a finding that the officers were acting within the scope of their employment.

Turning to the fifth factor, the State not only could foresee that correction officers would intervene and restrain inmates during altercations between inmates and fellow correction officers, but actually directs them to do so (see 7 NYCRR 251-1.2).

IV.

The Court of Claims erred in granting the State's motion for summary judgment because there are material factual questions as to what LaTour and Femia might have perceived to be the motivation and circumstances leading to the attack on claimant and thus whether they acted within the scope of their employment when they responded to the attack by restraining claimant, thereby enabling Wehby to beat him. Since the State failed to carry its burden, summary judgment should be reversed (Voss, 22 NY3d at 734; Winegrad, 64 NY2d at 853).

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order affirmed, with costs. Opinion by Chief Judge DiFiore. Judges Stein, Garcia and Feinman concur. Judge Rivera dissents in an opinion in which Judges Fahey and Wilson concur.

Decided November 25, 2019