■ ERNEST L. et al., Individually and as Parents and Guardians of NATASHA L., Appellants, v CHARLTON SCHOOL, Respondent, et al., Defendant. [817 NYS2d 165]—

Carpinello, J. Appeal from a judgment of the Supreme Court (Ferradino, J.), entered May 4, 2005 in Saratoga County, which partially granted a motion by defendant Charlton School for summary judgment dismissing the complaint against it.

Plaintiffs, who are the parents of Natasha L., commenced this

negligence action against, among others, defendant Charlton School, which operates as a foster care agency for girls, claiming that it was negligent in hiring and retaining defendant Peter Philo as a youth care worker. Philo was 26 years old when he began employment with Charlton in January 1999. At that time, Natasha, who was 15 years old, had already been a resident of the facility for about three months, having been adjudicated a person in need of supervision and placed there by Family Court. It is undisputed that Philo and Natasha, who otherwise knew each other, engaged in sexual intercourse on at least four occasions at his apartment during Natasha's weekend home visits.[1] At issue on appeal is an order of Supreme Court partially granting Charlton summary judgment. Finding no error in this decision, we affirm.

As recently reiterated by this Court, " ' "[a] claim based on negligent hiring and supervision requires a showing that [the] defendant[ ] knew of the employee's propensity to [commit the alleged acts] or that [the] defendant[ ] should have known of such propensity had [it] conducted an adequate hiring procedure" ' " (*Travis v United Health Servs. Hosps., Inc.*, 23 AD3d 884, 884-885 [2005] [citations omitted]). Here, Charlton met its initial burden of demonstrating that it acted with reasonable care in both hiring and retaining Philo. It established that it hired Philo following separate interviews with two school administrators during which both men were impressed with his demeanor and background. Moreover, Charlton sought references from Philo's previous employers, searched his motor vehicle records and confirmed that he was not listed on the State Central Register of Child Abuse and Maltreatment. Indeed, Philo denied any criminal record during the application process. Although plaintiffs question whether Philo had relevant experience to be hired and point out that he began work before any of his references contacted Charlton, they failed to submit proof in admissible form establishing that anything in Philo's background would have revealed a propensity to commit statutory rape (*see id.* at 885; *Steinborn v Himmel,* 9 AD3d 531, 533 [2004]; *see also Ghaffari v North Rockland Cent. School Dist.,* 23 AD3d 342, 343 [2005]).

With respect to plaintiffs' negligent retention claim, we note that "a school has a duty to adequately supervise students in its care, and may be held liable for injuries that are foreseeable and proximately related to the school's failure to provide adequate

---

1. Philo apparently pleaded guilty to four counts of statutory rape and endangering the welfare of a child and was sentenced to prison. He has defaulted in this action.

supervision" (*Dia CC. v Ithaca City School Dist.*, 304 AD2d 955, 956 [2003], *lv denied* 100 NY2d 506 [2003]; *see Ghaffari v North Rockland Cent. School Dist., supra*). Moreover, plaintiffs "generally must demonstrate the school's prior knowledge or notice of the individual's propensity or likelihood to engage in such conduct, so that the individual's acts could be anticipated or were foreseeable" (*Dia CC. v Ithaca City School Dist., supra* at 956). Here, Charlton demonstrated that between January 20, 1999 (the day Philo was hired) and March 9, 1999 (the day it received notice of a "rumor" that he and Natasha had sex), it received no reports of any inappropriate behavior of a sexual nature between him and any student. To this end, we note that Natasha herself testified that Philo never touched her inappropriately at school and that she never advised any staff member of their sexual encounters, which always took place at Philo's apartment during her weekend home visits. To the contrary, she repeatedly and adamantly denied any such involvement with Philo when administrators questioned her concerning the "rumor" about them.

In an effort to raise a question of fact, plaintiffs argue that numerous incidents during Philo's initial weeks of employment rendered it foreseeable that he would engage in sexual intercourse with a minor. With the exception of the subject rumor, however, none of these alleged incidents was of a sexual nature such that Charlton knew, or should have known, that he had a propensity to commit statutory rape (*see Steinborn v Himmel, supra*). Moreover, we are unpersuaded that the incident involving the "rumor" was itself sufficient to raise a question of fact given the undisputed sequence of events concerning this claim.

On March 9, 1999, one of Natasha's classmates reported to a staff member that Natasha and Philo engaged in sexual intercourse at Philo's apartment during Natasha's weekend home visit. According to this classmate, Natasha made this revelation during a conversation when yet a third girl was present. School administrators immediately conducted an investigation, which included interviewing Natasha, Philo, the reporting student and the classmate who was present during the alleged conversation. Both Natasha and Philo vehemently denied the "rumor."

According to Natasha, she met with staff members and/or school administrators on five occasions about the allegation and denied it each time. During one such meeting, the classmate who made the disclosure was present and Natasha was able to convince this girl that she had simply misunderstood their conversation. Moreover, the third student who was also present during the conversation denied overhearing any disclosure by

Natasha about a sexual encounter with Philo. Based on these facts, Charlton officials determined that the "rumor" was unsubstantiated. Notwithstanding, Philo himself resigned on March 12, 1999, claiming that the "rumor" would hurt his reputation and hinder his employment goals at Charlton.[2]

Thus, the only knowledge and notice that Charlton had concerning any alleged propensity on Philo's part to commit statutory rape was this investigated rumor concerning Natasha herself. Charlton fully investigated the matter and came to the reasonable conclusion based on the evidence then before it that it was unfounded (*see Travis v United Health Servs. Hosps., Inc.,* 23 AD3d 884 [2005], *supra*). Moreover, although Charlton did not fire Philo at this time, he resigned on his own volition. Under these circumstances, Supreme Court properly granted summary judgment to Charlton (*see Ghaffari v North Rockland Cent. School Dist., supra; Travis v United Health Servs. Hosps., Inc., supra; Steinborn v Himmel, supra*).

Crew III, J.P., Peters, Lahtinen and Kane, JJ., concur. Ordered that the judgment is affirmed, with costs.

---

**2.** It was not until one month after Philo's employment ended with Charlton that it was revealed that Natasha was pregnant with his child.