BL Doe 5 v Fleming (2024 NY Slip Op 03608)

Bl Doe 5

2024 NY Slip Op 03608

Decided on July 3, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 3, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, OGDEN, NOWAK, AND DELCONTE, JJ.

284 CA 23-01453

[*1]BL DOE 5, PLAINTIFF-RESPONDENT,
v
EDWIN D. FLEMING, DEFENDANT, AND ROCHESTER CITY SCHOOL DISTRICT, DEFENDANT-APPELLANT.

COZEN O'CONNOR, NEW YORK CITY (AMANDA L. NELSON OF COUNSEL), FOR DEFENDANT-APPELLANT. 
BANSBACH LAW P.C., ROCHESTER (JOHN M. BANSBACH OF COUNSEL), AND O'BRIEN & FORD, BUFFALO, FOR PLAINTIFF-RESPONDENT.

Appeal from an order and judgment (one paper) of the Supreme Court, Monroe County (Charles A. Schiano, Jr., J.), entered May 26, 2023. The order and judgment, among other things, denied the motion of defendant Rochester City School District for summary judgment dismissing the complaint against it. 
It is hereby ORDERED that the order and judgment so appealed from is affirmed without costs.
Memorandum: Plaintiff commenced this personal injury action pursuant to the Child Victims Act (see CPLR 214-g) alleging that she was sexually abused during a period from 1968 to 1970 by defendant Edwin D. Fleming (Fleming) while attending West High School in defendant Rochester City School District (defendant). Defendant filed a pre-answer motion to dismiss the complaint against it, which Supreme Court (Chimes, J.) denied. This Court, on a prior appeal, modified that order by granting those parts of the motion seeking to dismiss the second and third causes of action against defendant (BL Doe 5 v Fleming, 199 AD3d 1426, 1427-1428 [4th Dept 2021]). Defendant did not challenge on appeal the denial of that part of the motion seeking to dismiss the first cause of action against defendant, for negligence (see id. at 1427). After discovery, plaintiff moved for, inter alia, partial summary judgment on defendant's liability, and defendant moved for summary judgment dismissing the complaint against it. Supreme Court (Schiano, Jr., J.), inter alia, denied plaintiff's motion to the extent that it sought partial summary judgment on liability and denied defendant's motion. Defendant now appeals, as limited by its brief, from that part of the order and judgment that denied its motion. We affirm.
Plaintiff's negligence cause of action is premised on two theories, specifically defendant's alleged negligent supervision of plaintiff and defendant's alleged negligent retention of Fleming, a music teacher employed by defendant. Both theories require consideration of whether Fleming's misconduct was reasonably foreseeable. "Schools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision" (Mirand v City of New York, 84 NY2d 44, 49 [1994]; see Brandy B. v Eden Cent. School Dist., 15 NY3d 297, 302 [2010]). This duty "requires that the school exercise such care of them as a parent of ordinary prudence would observe in comparable circumstances" (BL Doe 3 v Female Academy of the Sacred Heart, 199 AD3d 1419, 1422 [4th Dept 2021] [internal quotation marks omitted]; see David v County of Suffolk, 1 NY3d 525, 526 [2003]). A plaintiff may succeed on a claim of negligent supervision by establishing "that school authorities had sufficiently specific knowledge or notice of the dangerous conduct which caused injury" (Mirand, 84 NY2d at 49). Further, although unanticipated third-party acts generally will not give rise to liability (see Brandy B., 15 NY3d at [*2]302), a school district may nonetheless "be held liable for an injury that is the reasonably foreseeable consequence of circumstances it created by its inaction" (Doe v Fulton School Dist., 35 AD3d 1194, 1195 [4th Dept 2006] [hereinafter Fulton School Dist.]; see Bell v Board of Educ. of City of N.Y., 90 NY2d 944, 946-947 [1997]; Mirand, 84 NY2d at 49-51; Murray v Research Found. of State Univ. of N.Y., 283 AD2d 995, 997 [4th Dept 2001], lv denied 96 NY2d 719 [2001]). Similarly, to establish a claim of negligent retention, "it must be shown that the employer knew or should have known of the employee's propensity for the conduct which caused the injury" (Shapiro v Syracuse Univ., 208 AD3d 958, 960 [4th Dept 2022] [internal quotation marks omitted]; see Pater v City of Buffalo, 141 AD3d 1130, 1131 [4th Dept 2016], lv denied 29 NY3d 911 [2017]).
Defendant contends that the court erred in concluding that there is a triable issue of fact whether it knew or should have known of Fleming's propensity to sexually abuse minors. In support of its motion, defendant submitted, among other things, plaintiff's deposition wherein she testified that she never explicitly told anyone about the sexual abuse by Fleming during the time that it was occurring and, further, that the actual abuse took place, as relevant, after school hours in the back of a music room that was in a remote part of the school building. Although plaintiff also testified that, prior to her graduation, an orchestra teacher told her that he was aware of the abuse, defendant contends that the court erred in concluding that the orchestra teacher's statement could be properly considered as a nonhearsay party admission of defendant under CPLR 4549 (see generally Watson v Peschel, 188 AD3d 1693, 1695-1696 [4th Dept 2020]).
Specifically, plaintiff testified that the orchestra teacher offered her a ride home from a bus stop after an evening event at the school. Instead of taking her home, however, the orchestra teacher took her to a park where, according to plaintiff, he told her "that he knew what was going on because he could hear through the walls from the orchestra room into that back room [where Fleming's office was located] and that [plaintiff] didn't want it to get out — [plaintiff] wouldn't want it to come out, so [she] should be nice to him." When plaintiff responded that she did not know what the orchestra teacher was talking about, he attempted to kiss her.
CPLR 4549 provides that "[a] statement offered against an opposing party shall not be excluded from evidence as hearsay if made . . . by the opposing party's agent or employee on a matter within the scope of that relationship and during the existence of that relationship." The rule was enacted in 2021 with the intent of "caus[ing] New York's hearsay exception to follow the approach of Federal Rule of Evidence 801(d)(2)(D)" (Senate Introducer's Mem in Support of 2021 NY Senate Bill S7093; see also Mem of Off of Ct Admin in Support of 2021 NY Senate-Assembly Bill S7093/A8040). Previously, in order for a statement by an employee or agent of a defendant to be admissible as a vicarious party admission, New York law required a showing that the declarant had "authority to speak on behalf of the defendant" (Cohn v Mayfair Supermarkets, 305 AD2d 528, 529 [2d Dept 2003]; see Hyde v Transcontinent Record Sales, Inc., 111 AD3d 1339, 1340 [4th Dept 2013]).
The court determined that the entirety of the statement attributed to the orchestra teacher was admissible as a vicarious party admission of defendant under CPLR 4549 and therefore properly considered when evaluating defendant's motion for summary judgment, because the orchestra teacher was employed by defendant and "[r]ecognizing and responding to the abuse of students while on school grounds certainly falls within the scope of the duties of a teacher employed by [defendant]."
Contrary to defendant's contention, CPLR 4549 does not predicate admissibility upon the location or timing of the utterance—whether on or off school grounds or during or after school hours. Indeed, while federal courts require a party seeking to invoke Federal Rules of Evidence rule 801 (d) (2) (D) to "establish (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency" (Pappas v Middle Earth Condominium Assn., 963 F2d 534, 537 [2d Cir 1992] [emphasis added]), the legislature did not draft the statute so narrowly. Rather, as drafted, CPLR 4549 merely requires that the statement be uttered "during the existence of that [employment] relationship" (emphasis added) and does not also require that it be uttered during the "course" of the relationship—i.e., during work hours, as required by federal caselaw (see United States v Rioux, 97 F3d 648, 660 [2d Cir 1996]; see also Pappas, 963 F2d at 537; cf. Broome Lender LLC v Empire Broome LLC, 220 AD3d 611, 611 [1st Dept 2023]). Had the [*3]legislature intended to mirror the test utilized by the Second Circuit, they certainly could have done so. They did not, and thus we give effect to the plain meaning of the statute as drafted.
We conclude that it is within the scope of a teacher's employment relationship to identify and assist a student who they believe is being sexually abused, and that the orchestra teacher's statement indicating awareness of the abuse of plaintiff was therefore "on a matter within the scope of [the employment] relationship" (CPLR 4549). We further conclude that the orchestra teacher's statement professing knowledge of the abuse occurred "during the existence of" the employment relationship, within the meaning of CPLR 4549, inasmuch as it is undisputed that he was employed by defendant at the time the statement was made. Therefore, we agree with the court that the statement is admissible pursuant to CPLR 4549.
Moreover, inasmuch as it is undisputed that the orchestra teacher's knowledge of Fleming's abuse was acquired while the orchestra teacher was acting within the scope of his employment, we conclude that his knowledge " 'is imputed to his . . . principal and the latter is bound by such knowledge [even if] the information is never actually communicated to [the principal]' " (Pauszek v Waylett, 173 AD3d 1631, 1633 [4th Dept 2019], quoting Center v Hampton Affiliates, 66 NY2d 782, 784 [1985]; see Kirschner v KPMG LLP, 15 NY3d 446, 465 [2010]). Whether the employee's knowledge may be imputed to the employer hinges upon whether that knowledge was acquired while the employee was acting within the scope of their employment (see Center, 66 NY2d at 784; Pauszek, 173 AD3d at 1633). Notably, we perceive no inconsistency between imputing knowledge acquired by an employee acting within the scope of their employment to the employer and the potential that the employer will escape vicarious liability for the employee's later actions outside the scope of that relationship.
We agree with our concurring colleague that the orchestra teacher's attempt to sexually abuse plaintiff falls well outside the scope of his employment relationship, and thus, his statement that the plaintiff "should be nice to him" if she did not want the news to get out is inadmissible under CPLR 4549. We disagree, however, that this renders the entirety of the orchestra teacher's statement inadmissible. The orchestra teacher's statement that he knew of the abuse was, as we concluded above, "on a matter within the scope of [the employment] relationship" (CPLR 4549), and is readily distinguishable from his later statement that plaintiff "should be nice to him," which was part of his attempt to abuse plaintiff.
Moreover, even without the disputed statement by the orchestra teacher, we conclude that defendant failed to meet its prima facie burden of establishing that the sexual abuse that led to plaintiff's injuries was unforeseeable as a matter of law (see Bell, 90 NY2d at 946-947). In the deposition submitted by defendant, plaintiff testified that her grades declined during her junior and senior years—while the abuse occurred—because she began "missing a lot of [her] regular classes [that she] was supposed to be scheduled in" (see generally Doe v Whitney, 8 AD3d 610, 611-612 [2d Dept 2004] [hereinafter Whitney]). Defendant does not dispute that plaintiff's scholastic decline was significant enough to be noticed by its personnel, but contends that it did in fact take relevant action by requiring plaintiff to meet with a counselor. Plaintiff, however, testified that the counselor was aware of and specifically questioned her on why she was spending so much time with Fleming, at which point plaintiff "just stopped" and "didn't want to talk any more about it." Contrary to defendant's characterization, plaintiff's response does not amount to an affirmative denial of abuse (cf. Ernest L. v Charlton School, 30 AD3d 649, 651 [3d Dept 2006]). In light of plaintiff's testimony regarding her behavior upon being questioned about Fleming, we conclude that there is a triable issue of fact whether defendant, in failing to investigate further, exercised the same degree of care and supervision over plaintiff that a reasonably prudent parent would have exercised (see Doe v Lorich, 15 AD3d 904, 905 [4th Dept 2005]; Whitney, 8 AD3d at 611-612).
Further, defendant offered no affirmative evidence establishing the existence of any sexual harassment prevention policies or the absence of any relevant complaints regarding Fleming prior to or during the relevant time period (cf. Ernest L., 30 AD3d at 651). Defendant did submit, among other things, the deposition testimony of a teacher who worked at plaintiff's high school during the years relevant to plaintiff's allegations and who continued his career with defendant as an administrator. The administrator testified that, in reference to complaints regarding sexual misconduct, "there was a time where we didn't cross our T's and dot our I's." The administrator explained that, before the 1980s, when the state "got a lot more forceful," there [*4]had been "always an effort to resolve the problem by removing the teacher." The administrator agreed that defendant "didn't necessarily take the action that would prevent [sexual abuse] from happening again." A factfinder could reasonably infer from that testimony that defendant was aware of other instances of sexual abuse of students by West High School teachers occurring prior to the 1980s and maintained a practice of removing the offending teachers without taking further action to prevent future sexual abuse.
Thus, defendant's own submissions raise a triable issue of fact whether plaintiff's injuries were the "reasonably foreseeable consequence of circumstances it created by its inaction" (Fulton School Dist., 35 AD3d at 1195). We therefore do not consider the sufficiency of plaintiff's submissions in opposition to defendant's motion (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Destiny S. v John Quincy Adams Elementary Sch., 98 AD3d 1102, 1103 [2d Dept 2012]).
All concur except Whalen, P.J., who concurs in the result in the following memorandum: I concur with the majority that Supreme Court properly denied the motion for summary judgment of defendant Rochester City School District (defendant) inasmuch as defendant failed to meet its prima facie burden of establishing that the sexual abuse that led to plaintiff's injuries was unforeseeable as a matter of law (see Bell v Board of Educ. of City of N.Y., 90 NY2d 944, 946-947 [1997]). I respectfully disagree, however, with the conclusion of the majority that any portion of the hearsay statement attributed to the orchestra teacher is admissible under CPLR 4549 as a party admission of defendant.
As the majority notes, CPLR 4549 provides that "[a] statement offered against an opposing party shall not be excluded from evidence as hearsay if made . . . by the opposing party's agent or employee on a matter within the scope of that relationship and during the existence of that relationship." The rule was enacted in 2021 with the intent of "caus[ing] New York's hearsay exception to follow the approach of Federal Rule of Evidence 801(d)(2)(D)" (Senate Introducer's Mem in Support of 2021 NY Senate Bill S7093; see also Mem of Off of Ct Admin in Support of 2021 NY Senate-Assembly Bill S7093/A8040). Thus, as enacted, CPLR 4549 uses practically identical language to that found in Federal Rules of Evidence rule 801 (d) (2) (D), which provides that a statement is not hearsay if it "is offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." The majority nonetheless concludes that, in enacting CPLR 4549, the Legislature intended to diverge from the federal case law interpreting Federal Rules of Evidence rule 801 (d) (2) (D). I disagree.
The majority construes the phrase "during the existence of that [employment] relationship" (CPLR 4549) as requiring no more than that the declarant made the statement while employed by the opposing party, regardless of the circumstances under which the statement was made. However, the federal cases applying the analogous rule 801 (d) (2) (D) support the conclusion that the determination whether a declarant's statement is admissible requires, in addition to consideration of the subject matter of the statement, a fact-specific inquiry into the context in which the statement was made and the parameters of the declarant's employment (see generally Wilkinson v Carnival Cruise Lines, Inc., 920 F2d 1560, 1565-1566 [11th Cir 1991]; compare Rainbow Travel Serv., Inc. v Hilton Hotels Corp., 896 F2d 1233, 1242 [10th Cir 1990] with Tallarico v Trans World Airlines, Inc., 881 F2d 566, 572 [8th Cir 1989]). The Second Circuit instructs that admissibility of an employee's statement as a vicarious party admission requires "that a party establish (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency" (Pappas v Middle Earth Condominium Assn., 963 F2d 534, 537 [2d Cir 1992] [emphasis added]; see Marcic v Reinauer Transp. Cos., 397 F3d 120, 128-129 [2d Cir 2005]). "The authority granted in the agency relationship need not include authority to make damaging statements, but simply the authority to take action about which the statements relate" (Pappas, 963 F2d at 538).
Here, plaintiff testified that the orchestra teacher stated "that he knew what was going on because he could hear through the walls from the orchestra room into that back room [where defendant Edwin D. Fleming's office was located] and that [plaintiff] didn't want it to get out — [plaintiff] wouldn't want it to come out, so [she] should be nice to him." To the extent that there was any ambiguity in the orchestra teacher's intent in making that statement, that ambiguity was [*5]resolved in the orchestra teacher's subsequent actions in attempting to kiss plaintiff. Thus, although the orchestra teacher was employed by defendant at the time he made the statement, that statement, considered in toto and in context, was indisputably made for the purpose of improperly pressuring plaintiff into engaging in sexual activity with him. Such conduct was "a clear departure from the scope of [his] employment [as a teacher], having been committed for wholly personal motives" (N.X. v Cabrini Med. Ctr., 97 NY2d 247, 251 [2002]; see Berardi v Niagara County, 147 AD3d 1400, 1401 [4th Dept 2017]; see also Doe v Heckeroth Plumbing & Heating of Woodstock, Inc., 192 AD3d 1236, 1239 [3d Dept 2021] [hereinafter Heckeroth]). Thus, even assuming, arguendo, that a portion of the orchestra teacher's statement pertained to a matter within the scope of his employment, I cannot conclude that "the statement was made during the course of [his employment] relationship" with defendant (Pappas, 963 F2d at 537; see In re Air Crash Disaster, 86 F3d 498, 536 [6th Cir 1996]) inasmuch as the orchestra teacher's employment relationship with defendant does not encompass his intentional acts of attempted sexual abuse (see generally N.X., 97 NY2d at 251; Heckeroth, 192 AD3d at 1239). To hold otherwise on these facts would, in my opinion, open the door to the contradictory legal conclusions that the inappropriate actions of the orchestra teacher—or a similarly situated teacher in a future case—were outside the scope of his employment such that defendant could not be held vicariously liable for them (see N.X., 97 NY2d at 251), but that the statements made by the orchestra teacher in furtherance of and contemporaneous with those actions were nonetheless the vicarious party admissions of defendant. I therefore agree with defendant that the court erred in concluding that the statement attributed to the orchestra teacher constituted nonhearsay that was admissible under CPLR 4549. 
Entered: July 3, 2024
Ann Dillon Flynn
Clerk of the Court